BROWN UNIVERSITY v. RHODE ISLAND COLLEGE OF AGRI-CULTURE AND MECHANIC ARTS et al.

(Circuit Court, D. Rhode Island. May 31, 1893.)

No. 2,377.

FEDERAL COURTS—JURISDICTION—SUITS AGAINST STATES—COLLEGE GRANTS.

The act of 1890 granting money in aid of agricultural colleges established by the states (26 Stat. 417) provides that the money shall be paid "to each state" in certain proportions, which are spoken of as "appropriated to the states;" that the fund, if lost, shall be replaced "by the state to which it belongs." It also provides that the money shall be actually paid to the state treasurer, who shall, upon the order of the trustees entitled thereto, pay it over to the treasurer of such institution. *Held,* that this imports a grant to the state, as a political body, of a fund to be administered by the state; and hence the United States circuit court has no jurisdiction to determine the rights of conflicting claimants to the fund, by a suit to restrain the state treasurer from paying the money to one of them, for that is, in effect, a suit against the state.

In Equity. On demurrer to the bill in a suit by Brown University against the Rhode Island College of Agriculture and Mechanic Arts and others. Demurrer sustained.

Arnold Green, for complainant.

This action is against the corporation respondent and certain persons who are in fact state officers, but is not, in substance, against the state or the property of the state. Liggett v. Ladd, 17 Or. 89, 21 Pac. Rep. 133; In re Agricultural Funds, 17 R. I. 815, 21 Atl. Rep. 916; Osborn v. Bank, 9 Wheat. 738; Davis v. Gray, 16 Wall. 203; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. Rep. 699; State of New Hampshire v. State of Louisiana, 108 U. S. 76, 2 Sup. Ct. Rep. 176; U. S. v. Beebe, 127 U. S. 338, 8 Sup. Ct. Rep. 1083; Christian v. Railroad Co., 133 U. S. 233, 10 Sup. Ct. Rep. 260; Louisiana v. Steele, 134 U. S. 230, 10 Sup. Ct. Rep. 511; North Carolina v. Temple, 134 U. S. 22, 10 Sup. Ct. Rep. 509; Stanley v. Schwalby, 147 U. S. 508, 13 Sup. Ct. Rep. 418; Antoni v. Greenhow, 107 U. S. 769, 2 Sup. Ct. Rep. 91; Litchfield v. Webster Co., 101 U. S. 773; Board v. McComb, 92 U. S. 532; Tomlinson v. Branch, 15 Wall. 460; and cases cited by the respondents under the first point, as stated below.

James Tillinghast and Robert W. Burbank, for respondents.

This bill is, in substance, against the sovereign state of Rhode Island, and therefore cannot be maintained. Briggs v. Lightboats, 11 Allen, 162; Troy, etc., R. Co. v. Com., 127 Mass. 43; Murdock Parlor Grate Co. v. Com., 152 Mass. 28, 24 N. E. Rep. 854; Governor, etc., v. Madrazo, 1 Pet. 110; Louisiana v.

Jumel, 107 U. S. 711, 2 Sup. Ct. Rep. 128; Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. Rep. 292, 609; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. Rep. 608; In re Ayers, 123 U. S. 443, 8 Sup. Ct. Rep. 164; Hans v. Louisiana, 134 U. S. 1, 10 Sup. Ct. Rep. 504; Virginia Coupon Cases, 114 U. S. 270–338, 5 Sup. Ct. Rep. 903, 923–925, 928, 931, 932, 962, 1020. This court has jurisdiction to hear and determine this demurrer. Dunton v. Muth, 45 Fed. Rep. 390; Mayor, etc., v. Cooper, 6 Wall. 247; Tennessee v. Davis, 100 U. S. 257; New Orleans, etc., R. Co. v. Mississippi, 102 U. S. 135; Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. Rep. 58; Railroad Co. v. White, 111 U. S. 134, 4 Sup. Ct. Rep. 353; Ames v. State of Kansas, 111 U. S. 449, 4 Sup. Ct. Rep. 437; Railroad Co. v. Myers, 115 U. S. 1, 5 Sup. Ct. Rep. 1113; Starin v. City of New York, 115 U. S. 248, 6 Sup. Ct. Rep. 28; Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. Rep. 819, 840.

CARPENTER, District Judge. This bill is brought by the Trustees and Fellows of Brown University against the Rhode Island College of Agricultural and Mechanic Arts, Melville Bull, treasurer of said corporation, and Samuel Clarke, general treasurer, and Robert W. Burbank, attorney general of the state of Rhode Island, etc. It sets out the act of congress donating lands to the states which may provide agricultural colleges, (12 Stat. 503;) the resolutions of the general assembly of Rhode Island (Acts and Resolves, Jan. Sess., 1863, pp. 214, 216) accepting the grant, and assigning the same to Brown University, and providing for the establishment therein of a college or department for the teaching of agriculture and the mechanic arts; the act of congress for the more complete endowment and support of the agricultural colleges, (26 Stat. 417;) the resolution of the general assembly passed May 19, 1892, accepting the provisions of the last-named act of congress; and, finally, the act of the general assembly, (P. L. c. 1078,) establishing and incorporating the respondent corporation "as a college, * * * as provided in the act of the congress of the United States" first above named. It then sets out that there is due from the government, under the above acts, the sum of $48,000, which sum, when received by the general treasurer, will be demanded by and paid over to the respondent corporation, and prays that said corporation and the general treasurer may be enjoined from so demanding or paying over such sum of money, and any other sum of money hereafter to be received on the same account, and that the same may be decreed to be paid over to the complainant. The bill was originally brought in the supreme court of Rhode Island, and removed by petition to this court.

It is objected that this court has no jurisdiction to determine the demurrer, because it involves the construction and effect of the resolutions and laws of the state; but I am clear that this case is one arising under the laws of the United States, although also involving rights under the state laws, and so is cognizable by this court. Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. Rep. 819, 840.

The respondents further contend that the action is in substance against the state, and so cannot be maintained. I think that an answer to the question thus raised may be extracted from the reasoning in Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. Rep. 699; wherein all the cases are fully considered and distinguished. It seems to me to be there held that a respondent, being a state

officer, may be enjoined from performing an act purely official, in pursuance of a state law which is found to be unconstitutional and void, but that the court has no power to control the "affirmative official action" of the officers of the state in "the performance of an obligation which belongs to the state in its political capacity." The distinction is close, but it has been established, and must be interpreted, applied, and maintained. In applying the rule thus laid down to the case in hand, I find that the act of congress of 1890 (26 Stat. 417) contains the provision, on the construction of which, as it appears to me, the answer to the question here raised must depend, that the sums thereby appropriated "shall be annually paid    *    *    *    to the state or territorial treasurer, or to such officer as shall be designated by the laws of such state or territory to receive the same, who shall, upon the order of the trustees of the college, or the institution for colored students, immediately pay over said sums to the treasurers of the respective colleges or other institutions entitled to receive the same.    *    *    *"

The complainant contends that the duty here assigned is a personal duty only, and that the fact that it is to be performed by a state officer imports only that the person upon whom the duty is devolved by the act of congress is to be ascertained by reference to the fact that he is the treasurer, or the officer specially designated by the state; that no duty is devolved on the state; and that, if this be so, any act of the state which may interfere with the action of the state officer in this regard is void, and should be held to be of no effect in the decision here.

The respondents contend that the provision for payment has the effect only to point out the particular person who shall, on behalf of the state, receive and give receipt for the draft on the treasury; that the grant made in the act is made to the state in trust for the specific purposes; that the administration of the trust belongs to the state; and that a decree controlling this administration is a decree against the state, and against the property of the state, and so is prohibited by the rule that a state may not be sued without its own consent.

Regarding the two courses of reasoning which I have thus summarized, I find it necessary, as I view the case, to make only one observation. This is an action to control the administration of a fund which is alleged to belong to the state only as trustee for a particular purpose. But, even so, if the respondents are right in their construction of the law, it is the trust property of the state, and not of the individual officer; and the suit here, being a suit to control and enforce the performance of a duty laid on the state by law, is no less a suit against the state than if it were, for example, a suit to compel the state to perform a duty arising from its own contract. In this connection it may be useful to make an observation as to the case of Pennoyer v. McConnaughy. That case, as well as most if not all those on whose authority it is based, was an action brought in a court of the United States, and was prohibited by the eleventh article of amendment to the constitution, being a suit against a state by a citizen of another state, and not,

as here, a suit alleged to be against the state by one of its own citizens. But that case was determined by ascertaining what is a suit against a state. Here the principle is invoked that in no court may a suit be brought against a state without its consent. The decision as to what constitutes a suit against a state is therefore in point as an authority. I shall assume, as contended by the respondents, that this action may not be maintained if it be, in substance, against the state. This proposition does not seem to me in any degree to depend on the allegation of "sovereignty" in a state, in the strict sense of that word. Sovereignty is an indivisible, inherent attribute, incapable of any derogation by law, and doubtless involving an immunity from suits or legal proceedings of any sort. But under the constitution, as originally adopted, a state might be sued by a citizen of another state, (Chisholm v. Georgia, 2 Dall. 419;) and the eleventh article of amendment does not prohibit a suit by a foreign sovereign or state against a state of the Union; and it seems that such a suit might now be maintained. Compare Memoir, etc., of B. R. Curtis, I, 281-284. So, too, it is undoubted that a state may now be sued by another state; and, if it be said that the necessary consent to be sued was involved in the act ratifying the constitution, it may be replied that without the consent of some certain state the eleventh amendment may now be abrogated, and the judicial power of the nation may be restored as it was in the beginning, and still further extended; so that in this respect, as indeed in most, if not all, other respects, the supposed sovereign is in point of fact subject to a power superior to itself, and covering and including its whole territory. It may, however, be taken as the general law of the land that suits by private persons against a state may not be maintained. Into the origin and reason of this rule it is not necessary, for the present purpose, to inquire.

Perhaps the specific question here to be determined is whether this suit be forbidden by the law of Rhode Island, since, if forbidden to the courts of the United States only, by virtue of the eleventh amendment, it might be the proper course to remand it to the supreme court of Rhode Island, rather than to make an order on this demurrer. I do not find that the courts of this state have specially passed on this question, but I think it may be taken to be an assumption which would underlie any decision, should such be required, that such a suit as this is alleged to be cannot be maintained; and so it must be, for this purpose, taken to be the general law, and so of force here, as elsewhere. In Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. Rep. 292, 609, the court assumed, "as a point of departure unquestioned" and "conceded in all the cases," that "neither a state nor the United States can be sued as defendant in any court in this country without their consent, except in the limited class of cases in which the state may be made a party in the supreme court of the United States by virtue of the original jurisdiction conferred on that court by the constitution." This statement of principle is, indeed, more than sufficient to decide the case then before the court, since that case

also, was an action in the United States court against a state by a citizen of another state. Nevertheless, I take it as a sufficient statement of the general law for the purpose of this case.

I come, then, to the question whether the grant in the act of congress of 1890 be a grant to the state, or a grant to the treasurer of the state, or to the college through him as a mere channel of payment. It is worth while to observe that the original grant made in the act of 1862, for the purpose of founding these colleges, was a grant to the state, and the control of the fund, and probably, also, of the colleges established thereby, was committed to the state. This is not denied here; and, while it is by no means decisive, it seems to me at least to suggest that, if the supplementary funds granted in 1890 are to be otherwise administered, there should appear at least an undoubted inference to that effect from the later act of congress. The second act must doubtless be taken to have been passed in view of the particular, as well as the general, provisions of the first act.

Coming, then, to a consideration of the verbal provisions of the act of 1890, I find that it first provides "that there shall be, and hereby is, annually appropriated, * * * to be paid, as hereinafter provided, to each state and territory for the more complete endowment and maintenance of colleges for the benefit of agriculture and the mechanic arts, now established, or which may hereafter be established," in accordance with the act of 1862, certain sums of money to be applied to certain purposes; that "the annual amount to be paid," after 10 years, "to each state and territory, shall be twenty-five thousand dollars;" "that no money shall be paid out under this act to any state or territory for the support and maintenance of a college when a distinction of race or color is made in the admission of students," and that the money appropriated shall in such cases be divided according to a prescribed method. The second section of the act is as follows:

"Sec. 2. That the sums hereby appropriated to the states and territories for the further endowment and support of colleges shall be annually paid on or before the thirty-first day of July of each year, by the secretary of the treasury, upon the warrant of the secretary of the interior, out of the treasury of the United States, to the state or territorial treasurer, or to such officer as shall be designated by the laws of such state or territory to receive the same, who shall, upon the order of the trustees of the college, or the institution for colored students, immediately pay over said sums to the treasurers of the respective colleges or other institutions entitled to receive the same; and such treasurers shall be required to report to the secretary of agriculture and to the secretary of the interior, on or before the first day of September of each year, a detailed statement of the amount so received and of its disbursement. The grants of money authorized by this act are made subject to the legislative assent of the several states and territories for the purpose of said grants: provided, that payments of such installments of the appropriation herein made as shall become due to any state before the adjournment of the regular session of legislature meeting next after the passage of this act shall be made upon the assent of the governor thereof, duly certified to the secretary of the treasury."

The act then goes on to provide that—

"If any portion of the moneys received by the designated officer of the state or territory for the further or more complete endowment, support, and

maintenance of colleges, or of institutions for colored students, as provided in this act, shall by any action or contingency be diminished or lost or be misapplied, it shall be replaced by the state or territory to which it belongs; and, until so replaced, no subsequent appropriation shall be apportioned or paid to such state or territory; * * *" and, further, that "the secretary of the interior shall ascertain and certify to the secretary of the treasury, as to each state and territory, whether it is entitled to receive its share of the annual appropriation for colleges, or of institutions for colored students, under this act, and the amount which thereupon each is entitled, respectively, to receive;" and that, "if the secretary of the interior shall withhold a certificate from any state or territory of its appropriation, the facts and reasons therefor shall be reported to the president, and the amount involved shall be kept separate in the treasury until the close of the next congress, in order that the state or territory may, if it shall so desire, appeal to congress from the determination of the secretary of the interior;" and "that the secretary of the interior shall annually report to congress the disbursements which have been made in all the states and territories, and also whether the appropriation of any state or territory has been withheld, and, if so, the reasons therefor."

These, I believe, are all the words in the act important to be considered, unless it be the provision that the presidents of the colleges shall make annual report to the secretary of agriculture and the secretary of the interior as to the work, condition, and progress, receipts and expenditures, of the colleges. It seems to me very plain that these words import, on their face, a grant to the state, and, by consequence, a duty in the state to administer the grant for the prescribed purpose; and I am unable to see any consideration, arising from the nature of the case, which should modify this plain import. The provisions as to payment to the treasurer and payment by him do not necessarily exclude the controlling action of the state. It is convenient that a particular person be designated as the agent for the receipt and disbursement; and these words make this designation without stating, in terms, at least, whether he acts as agent for the state or for the government. But the general scope of the act is clearly consonant only with a grant to the state. The money is to be "paid to each state;" the amount to be "paid to each state" is to be so much; no money shall be "paid to any state" in certain contingencies; the money is spoken of as "appropriated to the states," and the installments as becoming "due to any state;" that the fund, if lost, shall be replaced "by the state or territory to which it belongs;" that the secretary shall report, "as to each state and territory, whether it is entitled to receive its share;" and that the secretary, in certain cases, "shall withhold a certificate from any state or territory of its appropriation." It is also provided that the secretary shall report "the disbursements which have been made in all the states and territories, and also whether the appropriation of any state or territory has been withheld." These latter words do, indeed, give color to the suggestion that the references to a grant to the states imply, not a grant to the states as political bodies, but, rather, grants to persons or corporations within the limits of these states. But all the other phrases of the act look the other way. The act, verbally read, leaves no ground for the interpretation urged by the complainant. And a consideration of the purpose and scope of the act seems to me still more persuasive. Under the act of

1862 the state controls at least the fund which supports the college, and is liable to make good any loss or misapplication of the principal. Under the act of 1890 the state is equally liable, and ought to have at least an equal control. The very questions which will arise if this bill be retained suggest that they are fit to be determined by the state only, under whatever supervision the congress may see fit to exercise. The complainant contends that the treasurer, under the act of congress, has the simple ministerial duty to pay over the fund to the treasurer of the agricultural college. But here, it appears, are two corporations, each claiming to be the beneficiary. In order to determine between these conflicting claims, he must decide what action is necessary to constitute a beneficiary, and also whether such action has been had in favor of each of the claimants. This decision seems to me appropriate for the state by legislative act, and not for an officer controlled by judicial mandate. The state is to establish the beneficiary, to control its funds, to be responsible for its misdeeds and for its errors, if any there be, as to the application of funds; and I find myself unable to resist the conclusion that, unless restrained by clear words or certain implication, the state has the sole right to ascertain in the beginning, and at each successive step, the identity of the corporation which it has so designated, and for which it is so responsible. The demurrer must therefore be sustained.