## MITCHELL v. SMALE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 167. Argued January 23, 26, 27, 1891. — Decided May 11, 1891.

Plaintiff, a citizen of Illinois, sued in ejectment to recover possession of lands in that State claimed to have been granted to plaintiff's ancestor by a patent of the United States, making the tenant a citizen of that State, defendant. The owner, under whom the tenant claimed, a citizen of New York, appeared and, on his motion, was made party defendant. He then set up title under another patent from the United States, and moved for a removal of the cause, *first*, upon the ground of diverse citizenship, which was abandoned, and then, *secondly*, that there was a controversy involving the authority of the land department to grant a patent. *Held*, that the case was removable for the second cause.

*Hardin* v. *Jordan, ante,* 371, affirmed to the point that in Illinois, under a grant of lands bounded on a lake or pond which is not tide water and is not navigable, the grantee takes to the centre of the lake or pond ratably with other riparian proprietors, if there be such; and that the projection of a strip or tongue of land beyond the meandering line of the survey is entirely consistent with the water of the pond or lake being the natural boundary of the granted land, which would include the projection, if necessary to reach that boundary.

EJECTMENT. Judgment for the defendant. Plaintiff sued out this writ of error. The case is stated in the opinion.

*Mr. William Prescott* and *Mr. S. S. Gregory* for plaintiff in error. *Mr. William M. Booth* and *Mr. James S. Harlan* were with them on the brief.

*Mr. W. C. Goudy* for defendants in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The decision of this case depends upon the same general principles which have just been discussed in the case of *Hardin* v. *Jordan*, the two cases being in all essential respects much alike, both of them relating to land on the margin and under the waters of Wolf Lake. But before adverting to the supposed distinction between them, it is necessary to examine a question of jurisdiction.

· The action was ejectment, and was commenced in the Circuit Court of Cook County, by Mitchell, the plaintiff in error, against three defendants, Jabez G. Smale and John I. and Frank I. Bennett, and summons was duly served on them. The Bennetts, being attorneys, appeared specially for Conrad N. Jordan, and moved that he be substituted as sole defendant. The motion was made upon an affidavit of Jordan that the Bennetts had no interest, having conveyed the property to him before the suit was commenced, and that Smale was a mere tenant under him, Jordan, and had no other interest. The court denied the motion, and thereupon Jordan, on his own motion, was admitted to defend the cause as landlord and as codefendant. Afterwards, and in due time, Jordan filed a petition under the act of 1875 for the removal of the cause into the Circuit Court of the United States, alleging as a ground of removal that the plaintiff was a citizen of Illinois, and that he, Jordan, was a citizen of New York, and sole owner of the property, and that the sole controversy in the cause was between him, Jordan, and the plaintiff, stating the facts previously affirmed in his affidavit as to the want of interest in the Bennetts, and the tenancy of Smale. Objections to the removal being made by the plaintiff, Jordan asked and obtained leave to amend his petition, and filed an amended petition setting out, in addition to the facts stated in his original petition, the following matter, to wit:

" Your petitioner states that said suit is one arising under the laws of the United States in this, to wit, that plaintiff seeks in and by said suit to recover lands embraced in a survey of public lands made by the government of the United States in 1874, embracing a part of said section twenty (20), t'p 3ᵣ N., R. 15 E., 3d P. M., in Illinois, and patents issued un·

said survey under which your petitioner deraigned title in fee simple before the commencement of said suit and in him then vested by conveyance from the patentee.

"That the plaintiff claims that he is seized of the fractional tract described in the declaration as the grantee of one Horatio D. DeWitt; that the said survey, patents and deeds of petitioner are not made in pursuance of the acts of Congress and laws of the United States relating to the surveying and disposition of the public lands of the United States, and that said act of Congress and laws have been misconstrued by the said land department and disregarded, and that said survey, patents, deeds and the proceedings of the land department are illegal and void and in violation of the contract rights of said Mitchell under the laws of the United States; that by virtue of the alleged ownership of said fractional tract described in the declaration he, the plaintiff, under and in pursuance of said act of Congress and laws of the United States, is also the owner of said lands so owned by your petitioner by virtue of said survey of 1874 and patents and deeds thereunder. This petitioner claims title in fee to said lands other than said fractional tract by virtue of said survey of 1874, said patents and deeds issued thereunder in pursuance of the act of Congress aforesaid and laws of the United States, and therefore states that said suit is one arising under the laws of the United States entitling this petitioner to a removal of the suit under the act of Congress entitled 'An act to determine the jurisdiction of the Circuit Courts of the United States, and to regulate the removal of causes from the state courts, and for other purposes,' in force March 3, 1875, for that cause alone."

Whether the facts stated in the original petition for removal were sufficient for that purpose, may perhaps admit of some question. The plaintiff was alleged to be a citizen of Illinois, and the defendant, Jordan, a citizen of New York. The citizenship of the other defendants was not mentioned, though it is understood they were residents of Illinois. It is clear, therefore, that the case was not removable unless the interest of Jordan was so separate and distinct from that of the other defendants that it could be fully determined, as between him

and the plaintiff, without the presence of the others as parties in the cause. As he alone, according to his statement, had the title, and as Smale was merely his tenant, if this relation was admitted by Smale, (as it was,) there would seem to be no good reason why the contest respecting the title might not have been carried on between him and the plaintiff alone, so far as Smale was concerned. This was done in the case of *Ayers* v. *Watson*, 113 U. S. 594; but no objection to the removal on that ground was made, though objections were made on other grounds, which were not sustained by the court. Still, as the fact appeared on the record, if it had been sufficient to divest the Circuit Court of jurisdiction altogether, this court could hardly have omitted to pass upon it. We do not see that the statute of Illinois would make any difference in the result. It merely declares that in ejectment the occupant of the land shall be named as defendant, and that all other persons claiming title or interest to or in the same may be joined as defendants. Starr & Curtiss' Stat. 981, § 6. This is merely declarative of the common law rule, and makes no change in the character of the action or the principles of procedure therein. True, it was decided in the case of *Phelps* v. *Oaks*, 117 U. S. 236, that the tenant is a proper party, and that if the cause is removed by reason of his citizenship, the Circuit Court will not be deprived of jurisdiction by the subsequent admission of the landlord as a defendant, though a citizen of the same state with the plaintiff. But this does not prove that a landlord may not become the primary and only contestant, where the tenant's interests are subordinated to and made dependent on his.

As to the other defendants, the Bennetts, there may have been greater difficulty in sustaining a removal. They were made defendants, apparently in good faith, and were not acknowledged to be tenants of Jordan; and the plaintiff might well insist on prosecuting his action against them, as well as against Jordan, in order that, if he should be successful, there might be no failure of a complete recovery of the land claimed by him. We have held that a defendant cannot make an action several which the plaintiff elects to make joint. *Little* v. *Giles*, 118 U. S. 596.

But be this as it may, we think that the additional ground of removal, stated in the amended petition, was sufficient to authorize the removal to be made. It states very clearly that the controversy between the parties involved the authority of the Land Department of the United States to grant the patent or patents under which the defendant claimed the right to hold the land in dispute after and in view of the patent under which the plaintiff claimed the same land. This, if true, certainly exhibited a claim by one party under the authority of the government of the United States, which was contested by the other party on the ground of a want of such authority. In the settlement of this controversy, it is true, the laws of the State of Illinois might be invoked by one party or both ; but it would still be no less true that the authority of the United States to make the grant relied on would necessarily be called in question. We are, therefore, of opinion that the ground of removal now referred to presented a case arising under the laws of the United States, and so within the purview of the act of 1875. The amendment was properly allowed, and no valid objection exists in regard to the time of the application.

The plaintiff's declaration as finally amended contained two counts on which he relied, to wit :

1. A count claiming the fractional S.W. quarter of fractional section 20, in township 37 north, range 15 east, according to the official plat of the survey thereof filed in the land office at Chicago, Illinois, prior to the year 1848.

2. A count claiming so much of the S.W. quarter of said section 20 as lies between Wolf Lake and Hyde Lake. (This is the land immediately in front of that described in the first count, and, in the original plat, shown to be covered by water.)

The defendants pleaded not guilty, and a jury being waived, the cause was tried by the court before Judge Gresham, in July, 1885, at the same time with the case of *Hardin* v. *Jordan*. The judge made a special finding of facts, and gave judgment for the plaintiff for the S.W. fractional quarter of fractional section 20, in township 37 north, range 16 east, as patented by the United States to Horace B. DeV. itt under patent dated

March 1, 1850, and described in the first count, but limited by the meander line of the original survey on the side next to the lake; and as to all the rest of the land in dispute, found the defendants not guilty. The fractional quarter section thus found to belong to the plaintiff was one of the fractional lots on Wolf Lake surveyed in 1834–5, as mentioned in the case of *Hardin* v. *Jordan*, lying on the north side of the lake, and on the plat of the survey it was shown as bordering on and bounded by the lake.

The difference between this case and that of *Hardin* v. *Jordan* is supposed to arise from the fact that the strip or tongue of land running into the lake from the north side beyond the meander line (as mentioned in *Hardin* v. *Jordan*) was immediately in front of the fractional quarter section belonging to the plaintiff. In the special finding of facts the court sets out so much of the original survey as describes the meander line running around the north end of the lake and eastwardly as far as the Indiana line, and also a copy of the plat of the survey, an outline of which is shown in the report of *Hardin* v. *Jordan*. As stated in that case, the meander line is described in the survey as running along the margin of the lake, and the plat shows all the fractional lots to be adjoining the lake. The finding then states that in March, 1850, Horatio B. DeWitt purchased from the United States and received a patent for the lot described as "the S.W. fractional quarter of fractional ection 20, in township 37, range 15, in the district of lands subject to sale at Chicago, Illinois, containing $4\frac{53}{100}$ acres, according to the official plat of the survey of the said lands returned to the General Land Office by the surveyor general;" and that the plaintiff by mesne conveyances had acquired and held the title in fee simple conveyed to DeWitt by said patent. The finding then describes the lake and the tongue of land projecting into it from the north side substantially as shown in the report of *Hardin* v. *Jordan*, to which reference may be made. The finding then proceeds as follows:

"Eighth. That the lakes and lands not embraced in the original survey — that is to say, all the lands, swamp as well as those covered by water, including the ridge, which are out-

side the meandered line run around said lake or lakes — the Commissioner of the General Land Office caused to be surveyed in 1874; that after such survey was made the United States, by its proper officers, sold to Alice A. Condit the west half of the southwest quarter, the south half of the east half of the southwest quarter, and lot 2 of the southwest quarter, of fractional section 20, T. 37 N., R. 15 E., of this P. M., and issued to said Alice A. Condit patents in the usual form for said lands, and that the defendant, Conrad N. Jordan, is the owner, by mesne conveyances, of the lands so patented to said Condit; that Horatio B. DeWitt, owner of the fractional S.W. ¼ of fractional section 20 in the original survey, contested before the proper officers of the land department the right of the United States to sell and convey title to said lands under said second survey, which contest was decided against the said DeWitt by the Secretary of the Interior on appeal, and in favor of the right of the United States to sell said lands under said survey.

"Ninth. That said meandered line as it was originally run across said ridge from a point one chain east of the meander corner on the west and as is now adopted by the court as a line of boundary is entirely above the water, except where said line intersects the east line of the fractional quarter section, to which point the water of Wolf Lake may possibly reach at high stages, and that in ordinary stages the waters approach to within four or five chains of said point."

Our general views with regard to the effect of patents granted for lands around the margin of a non-navigable lake, and shown by the plat referred to therein to bind on the lake, were expressed in the preceding case of *Hardin* v. *Jordan,* and need not be repeated here. We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants of the beds of such lakes after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than taking from the first grantee a most valuable, and often *the* most valuable part of his grant. Plenty of speculators will always be found, as such property increases in value, to enter it and deprive the proper owner of

its enjoyment; and to place such persons in possession under a new survey and grant, and put the original grantee of the adjoining property to his action of ejectment and plenary proof of his own title, is a cause of vexatious litigation which ought not to be created or sanctioned. The pretence for making such surveys, arising from the fact that strips and tongues of land are found to project into the water beyond the meander line run for the purpose of getting its general contour, and of measuring the quantity to be paid for, will always exist, since such irregular projections do always, or in most cases, exist. The difficulty of following the edge or margin of such projections, and all the various sinuosities of the water line, is the very occasion and cause of running the meander line, which by its exclusions and inclusions of such irregularities of contour produces an average result closely approximating to the truth as to the quantity of upland contained in the fractional lots bordering on the lake or stream. The official plat made from such survey does not show the meander line, but shows the general form of the lake deduced therefrom, and the surrounding fractional lots adjoining and bordering on the same. The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are bounded by the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow.

We do not mean to say that, in running a pretended meander line, the surveyor may not make a plain and obvious mistake, or be guilty of a palpable fraud; in which case the government would have the right to recall the survey, and have it corrected by the courts, or in some other way. Cases have happened in which, by mistake, the meander line described by a surveyor in the field-notes of his survey did not approach the water line intended to be portrayed. Such mistakes, of course, do not bind the government. Nor do we mean to say that, in granting lands bordering on a non-navigable

lake or stream, the authorities might not formerly, by express words, have limited the granted premises to the water's edge, and reserved the right to survey and grant out the lake or river bottom to other parties. But since the grant to the respective States of all swamp and overflowed lands therein, this cannot be done.

In the present case it cannot be seriously contended that any palpable mistake was made, or that any fraud was committed, by the surveyor who made the survey in 1834–5. It is apparent from the finding of facts that the lake in question is subject to considerable changes in the height and depth of the water therein. A *datum*, or bench mark, is used in Cook County, Illinois, (where the premises in question are situated,) as a standard of comparison for the height of water in Lake Michigan. Of course the height of water in Wolf Lake is affected by that of Lake Michigan, since they are connected by two different outlets. The finding of facts states that the level of water in the lake in question, when the government survey was made in 1834–5, was 2.2 feet above the *datum*, and four-tenths of a foot above the average level of Lake Michigan, which is 1.8 feet above *datum*. But it also states that Lake Michigan, at times, rises to five feet above *datum*, which would cause the lake in question to rise to a level of 2.8 feet (or nearly 3 feet) higher than it was when the government survey was made. At such times, of course, very little of the said projecting tongue of land would be visible. But whether so or not, it would not alter the case. The existence of such projecting tongue is entirely consistent with the water or lake being the natural boundary of the plaintiff's land, which would include the said projection, if necessary, in order to reach the said boundary. It has been decided again and again that the meander line is not a boundary, but that the body of water whose margin is meandered is the true boundary. *Railroad Co.* v. *Schurmeir*, 7 Wall. 272; *Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178; *Middleton* v. *Pritchard*, 3 Scam. 510; *Canal Trustees* v. *Haven*, 5 Gilm. 548, 558; *Houck* v. *Yates*, 82 Illinois, 179; *Fuller* v. *Dauphin*, 124 Illinois, 542; *Boorman* v. *Sunnuchs*, 42 Wisconsin, 235; *Pere*

*Marquette Boom Co.* v. *Adams,* 44 Michigan, 403 ; *Clute* v. *Fisher,* 65 Michigan, 48 ; *Ridgeway* v. *Ludlow,* 58 Indiana, 249 ; *Kraut* v. *Crawford,* 18 Iowa, 549 ; *Forsyth* v. *Smale,* 7 Bissell, 201. The case last cited, *Forsyth* v. *Smale,* presented the very case of a tongue of land projecting beyond the meander line into Lake George, a small lake in Indiana, situated to the east of Wolf Lake and connected therewith. It is cited and commented on in the opinion in *Hardin* v. *Jordan.* In conclusion, our view on this part of the case is that the patent to DeWitt conveyed, and the plaintiff is entitled to, all of the fractional S.W. quarter of section 20 from its northern boundary line extending southwardly to the actual water line of the lake, wherever that may be, with the riparian rights incident to such position.

The other points raised in the case have been discussed in the opinion in *Hardin* v. *Jordan,* and do not require further notice. In conclusion, our opinion is that the judgment of the Circuit Court should be reversed, and that a general judgment should be rendered for the plaintiff for the property described in both additional counts of his declaration.

*The judgment is reversed accordingly, and the cause is remanded with instructions to enter judgment in conformity with this opinion.*

Mr. Justice Brewer, with whom concurred Mr. Justice Gray and Mr. Justice Brown, dissenting.

Mr. Justice Gray, Mr. Justice Brown and myself dissent in this case also, as in the preceding, on the merits : for the reason stated therein. This further fact is worthy of notice. The tract originally patented consisted of a fractional quarter section, containing only four and $\frac{53}{100}$ acres. It appears that at the time of the survey and patent, and now, there was and is a tongue of land extending out beyond the surveyed land into the lake, containing about twenty-five acres ; so that by purchasing this little piece of four acres and a fraction, at the government price, the purchaser, as it is held, took title not merely to the land surveyed, but to the twenty-five acres of

dry land outside of the survey, as well as the large area of land under the lake and in front of the bank. This result is certainly suggestive.

On the question of removal it appears that in this action, one of ejectment, there were present as defendants a tenant and his landlord, the latter coming in on his own motion, after suit was commenced. The tenant and the plaintiff were citizens of the same State. The Illinois statute of ejectment bearing upon the question of parties defendant is as follows: " If the premises for which the action is brought are actually occupied by any person, such actual occupant shall be named defendant in the suit, and all other persons claiming title or interest to or in the same may also be joined as defendants." Starr & Curtiss' Stat. 981, sec. 6. The defendant was therefore a necessary party. In *Phelps* v. *Oaks*, 117 U. S. 236, which was also an action of ejectment, tenant and landlord being parties defendant, the latter coming in as here after the commencement of the suit, this court held that " the plaintiff has a real and substantial 'controversy' with the defendant (the tenant) within the meaning of the act for removal of causes from state courts, which continues after his landlord is summoned in and becomes a party for the purpose of protecting his own interests." This decision seems to us to forbid a removal on the ground of citizenship.

So far as a Federal question is concerned, it is familiar law that ejectment turns on the plaintiff's title. If that be good, he is entitled to recover; if it fails, then it is immaterial what claim or title defendant may have, the verdict must be in his favor. " If there is any exception to the rule that in an action to recover possession of land the plaintiff must recover on the strength of his own title and that the defendant in possession can lawfully say, until you show *some* title, you have no right to disturb me, it has not been pointed out to us." *Reynolds* v. *Mining Company*, 116 U. S. 687, 692.

If plaintiff's first grantor, by his patent from the government for the land on the bank, took title to the centre of the lake, he was entitled to judgment for possession; and no act of the officers of the land department, subsequently thereto,

could divest or limit his right or prevent his recovering judgment. On the other hand, if the patent only carried title to the water line, then it is entirely immaterial to the plaintiff what action the officers of the land department may have taken in reference to the premises beyond; the defendant would be entitled to judgment; and that irrespectively of the question whether he had any title, or though it was vested in the State.

It is a novel proposition, that in an action of ejectment, a party defendant can, by setting up some claim under the laws of the United States, a claim which cannot be inquired into on the trial, because it in no manner affects the plaintiff's title, which is the subject of dispute, make such unnecessary and irrelevant claim a ground of removal from the State to the Federal court.

We think the case should have been reversed and remanded to the state court; and in that way an early reëxamination might have been had in the Supreme Court of the State on the merits of the principal question.