## GREENE et al. v. UNITED STATES.

## LOUCKS et al. v. SAME.

### (Circuit Court of Appeals, Fifth Circuit.   July 8, 1921.)

### Nos. 3523, 3525.

1. **Public lands ⬅114(3)—Reference to survey makes it part of description in patent.**

   A patent conveying lands mentioned therein according to the official plat of survey makes the plat a part of the conveyance which controls the limits of the grant as fully as if the descriptive features therein were written out on the face of the grant itself.

2. **Waters and water courses ⬅111—Meander line not boundary.**

   As a general rule a meander line run by a surveyor is not a boundary if the lands conveyed by the patent are described as bordering upon a lake or other body of water but the waters themselves constitute the boundary, the meander line being intended to ascertain the approximate acreage.

3. **Waters and water courses ⬅111—Purpose to make meander line boundary must be manifest.**

   Where a patent conveyed public lands in accordance with the official survey thereof, and the plat showed one of the boundaries to be a meander line, supposedly the shore of a lake, the meander line as described is not the boundary, where it deviates from the lake shore, unless a purpose to make such line, and not the shore line, the boundary is manifest because of the absence of the body of water shown in the plat or the presence of a misnamed body of water which satisfies the natural object shown, or a notation of intervening land.

4. **Public lands ⬅26—Resurvey correcting error cannot deprive former patentee of title already acquired.**

   The unquestioned right of the government to make new surveys of public lands and correct errors in former ones does not make the new survey conclusive against a prior purchaser so as to prevent his assertion of whatever title he had acquired as against one claiming under the new survey.

5. **Waters and water courses ⬅111—Lake shore, and not meander line, held boundary.**

   Where the patent referred to the official survey which showed a meander line as the shore of the lake, but it appeared that the lake shore varied from the calls for the line so that the fractional subdivisions conveyed by the patent, if extended to the lake shore, exceeded by 50 per cent. and 20 per cent. respectively, the acreage stated, and the intervening land was intersected with ravines sometimes filled with water, and was of little value until oil was discovered thereon, the shore of the lake, and not the meander line, was the boundary of the tract conveyed by the patent.

Appeals and Cross-Appeals from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Separate suits by the United States of America against Charles J. Greene, Jr., and others and against A. C. Loucks and others to quiet title to certain lands and to recover the value of oil removed therefrom by defendants. From a decree in each case quieting the title to the land and giving decree for the value of the oil removed less the cost of extracting it, defendants appeal, and the plaintiff files cross-appeal from the portion of the decree deducting cost of extracting the oil. Revers-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ed on appeal, with directions to dismiss the bill of complaint, and cross-appeals dismissed.

F. M. Cook, S. M. Cook, N. C. Blanchard, H. C. Walker, Jr., and Elias Goldstein, all of Shreveport, La., for appellants and cross-appellees in No. 3523.

J. D. Wilkinson, S. L. Herold, and J. A. Thigpen, all of Shreveport, La., D. Edward Greer, of Houston, Tex., and R. L. Batts, of Pittsburgh, Pa., for appellants and cross-appellees in No. 3525.

Robert A. Hunter, Sp. Asst. Atty. Gen., of Shreveport, La., for the United States.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On July 19, 1917, the United States filed in the United States District Court, for the Western District of Louisiana a bill in equity against Charles J. Greene, Jr., and others, seeking a decree setting up its title, and granting relief in regard to certain lands described as lots 2 and 3 of section 27, township 20 north, range 16 west, Louisiana meridian, containing 65.77 acres according to a plat of survey approved March 28, 1917, by Clay Tallman, Commissioner of the General Land Office of the United States.

On August 2, 1917, the United States filed a similar bill in said court against A. C. Loucks and others seeking a like decree as to the land described therein as lot No. 4 of said section 27 according to the same plat of survey.

Each bill prayed a decree declaring the lands to be mineral in character, and to be the property of the United States, declaring all adverse claims or titles of the defendants to be null and void, canceling the same as a cloud on complainant's title, and enjoining the defendants from creating any cloud on complainant's title to the lands, or any oil, gas, or mineral therein, or from extracting the same therefrom. It prayed for the appointment of a receiver to take charge of said lands pendente lite and for an accounting for the value of the oil and gas theretofore extracted therefrom by the defendants.

The defendants in each case denied the title of the United States and asserted that the land was held by them by mesne conveyances under patents theretofore granted by the United States conveying the same.

Greene and his codefendants asserted title under a patent including the fractional N. W. ¼ of said section 27.

Loucks and his codefendants asserted title under a patent including the fractional N. E. ¼ of said section 27. Each answer averred that at the dates of said patents said fractional N. E. ¼ and N. W. ¼ of said section 27 were conveyed according to the plat of survey then on file in said land office, and bordered on and adjoined Ferry Lake, and there was no land indicated as between the meander line and the waters of said lake (which is a navigable body of water); that said patents embraced and conveyed the lands now claimed by the United States.

The entire township 20 was originally surveyed by one Warren in 1839. His plat of township 20 showed Ferry Lake as the northerly

boundary of fractional lot 27. No land is indicated on said plat as lying between the meander line of said lake and the waters thereof. In 1908 the presence of oil in adjacent territory caused the President to withdraw all lands of the United States in this and other townships from any manner of appropriation, and a resurvey of this township was directed where it bordered on Ferry Lake and its arms. This survey determined that the mean high-water level of Ferry Lake at the time of said Warren survey in 1839, as well as in 1812, when Louisiana became a state, was 173.09 feet above the Gulf level; that Warren so recognized it and that his section lines terminated at the lake at this elevation, but that in meandering the shore of said lake in front of said section 27 Warren's courses and distances do not follow the shore of the lake, but run over high ground which at its farthest point is about 1,200 feet from the true shore line. The omitted land is intersected with several ravines running to Ferry Lake. It contains 97.64 acres divided into lots 2, 3, and 4 of section 27 and fractional section 23, as per said plat of survey of March 28, 1917, the lots 2 and 3 contain 65.77 acres. No. 4 contains 14.13 acres, and section 23, 17.44 acres. The acreage of section 27 as surveyed by Warren in 1839 was 468.67 acres. The acreage claimed by the defendants in case No. 3523 to be included in the Warren survey and the patent thereunder under which they claim is that in lots 2 and 3 and about one-half of the 16.61 acres described as the fractional section 23 in the Kidder survey, or 74.08 acres. That claimed by the defendants in No. 3525 is lot No. 4 of section 27 and the rest of said fractional section 23, or 23.56 acres. While these suits involve no part of the land described as section 23, the title to the acreage is necessarily disposed of by the decision of these cases.

The cases were referred to a master, who took testimony and made a report finding that the land in controversy had been omitted from the Warren survey by manifest error, and that the government was the owner thereof. He also found that the government was entitled to recover the value of the oil received therefrom less all costs of extracting the same. The defendants excepted to the report, and the government to so much thereof as allowed to defendants the cost of raising said oil.

The court overruled all exceptions and rendered a decree in favor of the government in accord with the master's report.

The defendants appealed, assigning error in the finding that the government was the owner of the land, and the government has taken a cross-appeal from the finding that defendants were to be credited with the cost of raising said oil.

There was no dispute as to the facts. The only evidence on which the master predicated his finding that the patents including the northwest and northeast fractional quarters of said section 27 did not cover the land sued for by the government was that the resurvey of township 20 by Kidder and a reproduction of the meander line of the Warren survey, according to the calls in Warren's field notes, did not follow the ordinary high-water elevation of 173.09 feet above Gulf level, but ran over high ground at distances varying from a few feet to about one-fourth of a mile from said 173.09-foot contour. Warren's plat does not

show any meander line, but gives the waters of Ferry Lake as the boundary of the fractional sections bordering thereon. The section lines of these sections are conceded to reach the ordinary high-water level as determined by Kidder and the scientific experts to have existed at the time of Warren's survey.

Kidder's survey was made for the purpose of marking the ordinary high-water level of Ferry Lake in 1839 at the time of Warren's survey. This elevation was determined by careful examination and by ecological and geological experts, and a meander line carefully run at 173.09 feet above Gulf level, that having been fixed as the ordinary high-water level existing in 1839. The plat of this survey also traces the meander line as given by the calls of Warren's field notes.

Both meander lines, thus marked, beginning on the west side of section 27, were generally in a northeast direction to the most northerly point of the land on the south shore of Ferry Lake as marked on the Kidder and Warren plats respectively, and then run in a southerly and southeasterly direction to section 26 on the east.

The additional land shown on Kidder's plat is a strip bounded on the north by a broken line, forming roughly an arc with the courses of Warren's meander line as its chord. Its greatest width is about one-quarter of a mile; its length is about one mile.

The evidence shows that the land in controversy was regarded as conveyed by said patents; that parts of it were cultivated and a dwelling house was erected on the part sued for in the Greene Case, near the lake. The Warren plat referred to in said patents indicated Ferry Lake as the northern boundary of the land conveyed by each patent.

The only apparent reason for the departure of the traverse line from the shore of the lake is that the land was broken with ravines running down to the lake; that these ravines in times of very high water were partially flooded, and the convenience of the surveyor may have occasioned a failure to follow the water level, the land left out being at the time of little value. In other parts of this survey the Warren meander line, as reproduced by Kidder, in places runs into the lake and includes within its calls, as land, small portions of the lake.

There is no suggestion of any purpose on the part of Warren not to include all the land up to the water of the lake in this section as surveyed; and if the land described in the Kidder survey as outside of Warren's traverse line in section 27 is included, it still leaves section 27 a fractional section.

The evidence of the government to the effect that the traverse line was a manifest error is only the expression of an opinion, based solely on the fact that it runs from the margin of the lake on high ground in the meander heretofore described. This opinion is based on an absence of explanation given for the discrepancy, and not on any evidence of an intention to make the line one of boundary, and to depart from the general rule. It is conceded that the survey as a whole (except in the case where a large tract was clearly omitted where Jeems Bayou and Ferry Lake unite) follows generally the contour of the lake and makes the lake the boundary. It is also not disputed that as to the land sold by the government in section 27 the survey referred to in the patent

represented the lake as its boundary. The question therefore is: Did the evidence in this case show that there was such a mistake in the Warren survey that the government can now have the same corrected against the present owners of the land conveyed by its patents.

[1] These patents respectively conveyed the land mentioned therein "according to the official plat of survey of said lands returned to the General Land Office by the Surveyor General." (This was the Warren survey.) This constituted such plat a part of the deed, "and controls, so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself." Cragin v. Powell, 128 U. S. 691, 9 Sup. Ct. 205, 32 L. Ed. 566; McIver's Lessee v. Walker, 9 Cranch, 173, 177, 3 L. Ed. 694; Jefferis v. East Omaha Land Co., 134 U. S. 178, 194, 195, 10 Sup. Ct. 518, 33 L. Ed. 872; Chapman et al. v. St. Francis Levee District, 232 U. S. 186, 197, 34 Sup. Ct. 297, 58 L. Ed. 564.

[2] The general rule, well established by decisions of the Supreme Court of the United States, is that, where a meander line is run, if lands are described as bordering on a stream or body of water, the meander line is not a boundary, but the waters themselves constitute the boundary, the meander line being intended to ascertain the approximate acreage which is to be paid for. Railroad Co. v. Schurmeier, 7 Wall. 272, 286, 19 L. Ed. 74; Hardin v. Jordan, 140 U. S. 371, 380, 11 Sup. Ct. 808, 838, 35 L. Ed. 428.

The patent to the fractional part of section 27 held by defendants in the Greene Case called for 147.25 acres. The land claimed by the government as outside of this acreage is 65.77 acres, and the additional land involved in section 23 is about 8.30 acres, so that the land claimed by defendants is about 50 per cent. in excess of the acreage given in said patents. The acreage covered by the patent under which defendants claim in the Loucks Case is 123.49½ acres, and the land claimed by the government as outside of this acreage is 14.13 acres. The additional land involved in section 23 is about 9.44 acres, so that the land claimed by defendants in the Loucks Case is not quite one-fifth of the acreage named in the patent.

[3] The case is well within the rule that a meander line is not to be considered as a line of boundary, where the plat of survey shows a body of water as the boundary, but that there must be some absence of the body of water in the descriptions where shown on the plat, or another body of water which satisfies the natural object shown, although misnamed, or a notation of intervening land, such as a marsh, so that the plat when applied to the ground shows either a clear mistake as to the existence of the natural object or a purpose not to call for it as a boundary.

The case of Mitchell v. Smale, 140 U. S. 406, 412, 11 Sup. Ct. 819, 840, 35 L. Ed. 442, clearly demonstrates the above principle. There a fractional lot calling for 4½ acres was shown on the plat of survey as bounded by a lake. There was a point containing 25 acres outside of the meander lines, projecting into the lake. This 25 acres was subsequently surveyed by the Land Department and patented to another

purchaser. The second patent was held invalid and the land decided to have been conveyed by the first patent. The court said:

"We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants to the beds of such lakes after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than taking from the first grantee a most valuable, and often the most valuable, part of his grant. Plenty of speculators will always be found, as such property increases in value, to enter it, and deprive the proper owner of its enjoyment; and to place such persons in possession under a new survey and grant, and put the original grantee of the adjoining property to his action of ejectment and plenary proof of his own title, is a cause of vexatious litigation which ought not to be created or sanctioned. The pretense for making such surveys, arising from the fact that strips and tongues of land are found to project into the water beyond the meander line run for the purpose of getting its general contour, and of measuring the quantity to be paid for, will always exist, since such irregular projections do always, or in most cases, exist. The difficulty of following the edge or margin of such projections, and all the various sinuosities of the water line, is the very occasion and cause of running the meander line, which by its exclusion of such irregularities of contour produces an average result closely approximating to the truth as to the quantity of upland contained in the fractional lots bordering on the lake or stream. The official plat made from such survey does not show the meander line, but shows the general form of the lake deduced therefrom, and the surrounding fractional lots adjoining and bordering on the same. The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are bounded by the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow."

That acreage is not controlling in limiting the grant is clearly shown by the above case. There are many others of the same purport.

In Johnson v. Johnson, 14 Idaho, 561, 95 Pac. 499, 24 L. R. A. (N. S.) 1251, the patent called for a tract of 86.06 acres. The natural object was held to be the boundary and to carry with it 143 acres.

Where the survey mentioned in a patent calling for 80 acres depicted a lake as a boundary, and the meander line did not coincide with the lake shore, the lake was decided to be the boundary, and the patent was held to convey 100 acres lying between the meander line and the lake. Barringer v. Davis, 141 Iowa, 428, 120 N. W. 65. See, also, Lindsey v. Hawes, 2 Black. 554, 560, 17 L. Ed. 265; Brown v. Huger, 21 How. 305, 16 L. Ed. 125; St. Clair v. Lovingston, 23 Wall. 46, 63, 23 L. Ed. 59; Grand Rapids & Indiana R. Co. v. Butler, 159 U. S. 87, 15 Sup. Ct. 991, 40 L. Ed. 85; St. Anthony Falls Water Co. v. Board, etc., 168 U. S. 349, 18 Sup. Ct. 157, 42 L. Ed. 497; Chapman & Dewey v. St. Francis Levee District, 232 U. S. 186, 197, 34 Sup. Ct. 297, 58 L. Ed. 564.

The decisions holding the meander line to be one of boundary all recognize the general rule to be as above stated and rest on exceptions thereto. In the case of Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. Ed. 68, the plat called for the Indian river as a boundary. There was a water course where the plat depicted the river, and the mistake was in calling it Indian river. It was held that this water course (not

a meander line) was the boundary intended, and that the patent did not include a large tract of land, never surveyed, which lay between the bayou and Indian river.

In Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. Ed. 171, the survey showed a tract of marsh or swamp lands beyond the meander line. The patent therefore was held to terminate at the meander line, and not to carry the swamp lands lying between it and Lake Erie.

In the present cases the plat of survey shows nothing as the meander line, but the shore line of Ferry Lake.

Where a plat called for a lake, and there was no lake in front of the so-called meander line, but only one located outside of the side lines of the grant, it was held that the so-called meander line must be taken as the boundary instead of shifting the entire grant. French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800.

Upon the same principle, coupled with evidence of the fraudulent character of the survey, there being no lake or body of water at or near the spot indicated on the plat of survey, rests the decision in Security Land & Exploration Co. v. Burns, 193 U. S. 182, 24 Sup. Ct. 425, 48 L. Ed. 662. And also Lee, Wilson & Co. v. United States, 245 U. S. 24, 38 Sup. Ct. 21, 62 L. Ed. 128.

The decision of the Supreme Court of the United States in Producers' Oil Co. v. Hanzen, 238 U. S. 325, 35 Sup. Ct. 755, 59 L. Ed. 1330; affirming the decision of the Supreme Court of Louisiana in 132 La. 691, 61 South. 754, lays down the general principle and illustrates the exceptions. There Bristol, a surveyor, made a survey of parts of sections 3, 4, 9, and 10 of this township 20 and referred in his field notes to a spur of marsh extending "out north." It was also admitted that the land in controversy was high land when the Bristol survey was made. This case establishes:

"As a general rule meanders are not to be treated as boundaries, and when the United States conveys a tract of land by patent referring to an official survey which shows the same bordering on a navigable river, the purchaser takes title up to the water line.

"Where the facts and circumstances, however, affirmatively disclose an intention to limit the grant to actual traverse lines, these must be treated as definite boundaries; and a patent to a fractional section does not necessarily confer riparian rights because of the presence of meanders.

"Where, as in this case, the survey of improved lands was made at the express request of the occupant to whom they were subsequently patented, and the grant specified the number of acres, and other circumstances also indicated that only the lands conveyed were those within the traverse lines, the patent of the United States conferred no riparian rights, but simply conveyed the specified number of acres."

[4] That the government has the right to make new surveys and correct errors in former one does not in any way limit the above general rule or create a different rule where such new survey is made.

The right of the government to make such new surveys is clear; but, where the United States has previously parted with the title, a new survey does not conclude a prior purchaser from asserting whatever title he has acquired by his older patent as against one claiming under the new survey. Cragin v. Powell, 128 U. S. 696, 9 Sup. Ct. 203, 32 L.

Ed. 566; Hardin v. Jordan, 140 U. S. 371, 400, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. 819, 840, 35 L. Ed. 442; Hardin v. Shedd, 190 U. S. 508, 23 Sup. Ct. 685, 47 L. Ed. 1156.

This limitation on the effect of a new survey is recognized in the cases asserting the right of the government to make it. Thus in Kirwan v. Murphy, 189 U. S. 35, 23 Sup. Ct. 599, 47 L. Ed. 698, while the right to order a new survey is upheld, it is expressly stated that the right of the existing grantee could be thereafter asserted. To the same effect is the decision in Lane v. Darlington, 249 U. S. 331, 39 Sup. Ct. 299, 63 L. Ed. 629.

[5] We think that the present cases are governed by the general rule above laid down, and that the patents to said section 27 convey all of the land to the waters of Ferry Lake. The side lines of said section 27 terminate at the lake. The lake lies in the same relative position to said section as the Warren plat of survey indicates. It lies from a few feet to less than a quarter of a mile distant from Warren's meander line as now laid on the ground on the new survey. The omitted land was at the time of little value and broken by ravines. There is no evidence of any intention to grant only to the traverse line, but the apparent purpose was to include all the land to the lake in the survey; that in each of these cases the meander line, according to its calls, is not to be treated as a boundary, but that, the patents referring to an official plat which shows the land granted as bordering on the lake, the patentee took title to the water line.

The decree in each case is reversed on the appeal therein, with directions that the bill of complaint be dismissed by the District Court. Each cross-appeal is dismissed.