UNITED STATES *v.* LANE ET AL.

UNITED STATES *v.* GULF REFINING COMPANY
OF LOUISIANA.

UNITED STATES *v.* SOUTHWESTERN GAS &
ELECTRIC COMPANY ET AL.

UNITED STATES *v.* GULF REFINING COMPANY
OF LOUISIANA.

UNITED STATES *v.* GREENE ET AL.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

UNITED STATES *v.* LOUCKS ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

Nos. 160, 163, 162, 161, 192 and 191.　Argued January 2, 3, 1923.—
Decided January 22, 1923.

Lots patented under the public land laws according to a plat show-
ing them bordering on a lake, extend to the water as a boundary
and embrace pieces of land found between it and the meander line
of the survey, where the failure to include such pieces within the
meander was not due to fraud or mistake but was consistent with
a reasonably accurate survey, considering the areas included and
excluded, the difficulty of surveying them when the survey was
made and their value at that time.　P. 664.

274 Fed. 290, and 145, affirmed.

APPEALS and certiorari to review decrees of the Circuit
Court of Appeals reversing decrees of the District Court
favorable to the United States in suits asserting title to
several parcels of land in Louisiana.

*Mr. Assistant Attorney General Riter,* with whom *Mr.
Solicitor General Beck* was on the briefs, for the United
States.

*Mr. S. L. Herold*, with whom *Mr. J. A. Thigpen, Mr. E. P. Lee, Mr. Hampden Story, Mr. J. D. Wilkinson* and *Mr. R. L. Batts* were on the briefs, for appellees in Nos. 160, 163, 162 and 161, and respondents in No. 191.

*Mr. Elias Goldstein,* with whom *Mr. H. C. Walker, Jr., Mr. S. M. Cook,* and *Mr. Hampden Story* were on the brief, for appellees in No. 192.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

These suits involve claims of title on the part of the United States, hereinafter called the plaintiff, to various parcels of land lying along the border of Ferry Lake, a navigable body of water in Caddo Parish, Louisiana. Answering these claims, the defendants in the respective cases averred that plaintiff, long before the bringing of the suits, had conveyed by patents to private persons certain fractional subdivisions bordering on the lake; that these fractions were represented on the official plat of the government survey, made by one Warren in 1839 and duly approved and filed, as bounded on the lake side by the waters of the lake; that in each of the cases the land in controversy was a small tract, lying along the edge of the lake and constituting part of the particular fractional subdivision so conveyed; and that consequently, plaintiff had divested itself of whatever title it originally had.

Certain alternative defenses, based upon the alleged ownership of the lands by the State of Louisiana, were pleaded, but, in view of the conclusions we have reached, it is not necessary to consider them. The District Court entered decrees for the plaintiff which the Circuit Court of Appeals reversed (274 Fed. 145, 290), and the cases are here upon appeal except the Loucks case, which comes on certiorari. The foregoing averments of fact contained in the answers are established by the record.

In 1916–1917, nearly eighty years after the Warren survey—the lands in the meantime having become valuable for their deposits of oil and gas—a new survey was made under the direction of the General Land Office. This survey shows that the line run by Warren, purporting to meander the shore of the lake, did not in all instances coincide precisely with the water's edge. In the four cases first named in the title, the parcels of land lying between the meander line and the lake are of small extent. The meander line throughout its length approximately conforms to the sinuosities of the shore, sometimes, however, running for short distances inland and sometimes for short distances into and through the water. In the first mentioned suit the Warren survey indicates a fractional subdivision containing 26.80 acres, the new survey adds 5.67 acres. In the second suit the Warren survey indicates 23 acres, the new survey adds 12.72 acres. In the third suit the Warren survey indicates 155 acres, the new survey adds 27.87 acres. In the fourth suit the Warren survey indicates 114.80 acres, and the new survey adds 11.49 acres.

The lands in question are all in township twenty, the first mentioned being in section 3, the second in section 10, the third in section 13 and the last in section 24. Following the meander line of the Warren survey the distance from the first of these tracts to the last is about five miles. Leaving out of consideration the large tract involved in *Producers Oil Co.* v. *Hanzen,* 238 U. S. 325, and the large tract involved in *Jeems Bayou Fishing & Hunting Club* v. *United States, ante,* 561, the aggregate of the various parcels lying outside the meander line is about 70 acres, and the aggregate of the various areas of water included within the meander line is about 44 acres. The facts bring the cases fairly within the rule announced by this Court in *Mitchell* v. *Smale,* 140 U. S. 406, and not within the exception which was followed in the *Jeems*

*Bayou Case.* So far as the instant cases are concerned, there is nothing in the circumstances to suggest the conclusion that any fraud was committed or palpable mistake made by Warren. At the time of his survey the lands were of such little value, the locality so wild and remote, and the attendant difficulties so great that the expenditure of energy and money necessary to run the lines with minute regard to the sinuosities of the lake would have been quite out of proportion to the gain. We are of opinion that the survey of 1839, except as to the two large tracts just mentioned, is not open to challenge. The precisely accurate survey of 1916–1917 would probably never have been made but for the greatly increased value of the lands due to the discovery of oil and gas therein. It is unnecessary to do more than quote the language of this Court in *Mitchell* v. *Smale, supra,* 413:

"The pretence for making such surveys, arising from the fact that strips and tongues of land are found to project into the water beyond the meander line run for the purpose of getting its general contour, and of measuring the quantity to be paid for, will always exist, since such irregular projections do always, or in most cases, exist. The difficulty of following the edge or margin of such projections, and all the various sinuosities of the water line, is the very occasion and cause of running the meander line, which by its exclusions and inclusions of such irregularities of contour produces an average result closely approximating to the truth as to the quantity of upland contained in the fractional lots bordering on the lake or stream. The official plat made from such survey does not show the meander line, but shows the general form of the lake deduced therefrom, and the surrounding fractional lots adjoining and bordering on the same. The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are

bounded by the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow."

While the facts are somewhat different and the extent of the omission somewhat greater, we think the general rule should, likewise, be applied in the remaining two cases. The Warren survey and plat here indicate an area of about 271 acres in the fractional subdivisions conveyed. The lands added by the new survey constitute a compact body of 97.64 acres—65.77 acres of which are involved in the Greene case and 14.13 acres in the Loucks case— having the outline of a long and rather irregular crescent, with the outer curve next to the water. The inner boundary, running between the two points of the crescent, is made up of a series of straight lines, with intervening angles conforming to the outlying curve only to a roughly approximate degree. The length of the tract is nearly 4,000 feet and the extreme width about 1,200 feet. Running back from the shore there are numerous ravines, creating, in and along the outer rim of the tract, a series of alternating points and indentations. The evidence justifies the conclusion that in 1839, and especially in time of high water reaching back into the ravines, the establishment of a line precisely coincident with the water's edge would have been a matter of expense and difficulty wholly disproportionate to the then value of the omitted acreage. As in the four cases first discussed, the Warren plat of the survey referred to in the patent represents the lake as the boundary. The survey, taken as a whole, with the exception of two large tracts already mentioned, follows with a fair degree of accuracy the contour of the lake and the evident purpose was to include in it all the land to the water's edge. Considering

the circumstances in respect of the character and value of the lands, the wildness and remoteness of the region and the difficulties surrounding the work of the surveyors, the failure to run the lines with more particularity was not unreasonable and we are constrained to agree with the lower court in holding that the waters of the lake and not the traverse line constitute the boundary.

The decrees of the Circuit Court of Appeals in all the cases are, therefore,

*Affirmed.*