QUAPAW LAND CO., Inc., v. BOLINGER.

Circuit Court of Appeals, Fifth Circuit.
May 17, 1929.

Rehearing Denied June 20, 1929.

No. 5527.

S. L. Herold, of Shreveport, La. (Thigpen, Herold & Cousin, of Shreveport, La., on the brief), for appellant.

W. H. Scheen, Frank J. Looney, and J. M. Grimmet, all of Shreveport, La. (Pugh, Grimmet & Boatner, of Shreveport, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This was a petitory action by appellant to eject appellee from a tract of 23.42 acres of land which fronts on Cross Lake, in Caddo parish, Louisiana. The land in dispute lies in fractional section 5, township 17 north, range 14 west. Appellant claims it under a plat of resurvey, approved by the Commissioner of the General Land Office in 1925, according to which it was represented as being omitted from the original government survey made in 1837; whereas appellee's title depends upon whether it was included in such original survey as a part of lot 3 of fractional section 5, by meander lines of the lake in front of that lot. At the close of the evidence, upon motions being submitted by both parties for a directed verdict, the trial court directed a verdict for appellee.

The field notes and plat of the original survey represent Cross Lake as extending practically around the southwest quarter of section 5, leaving 64.58 acres in the south part of the northwest quarter, designated as lot 1, and in the east half lot 2 with 56 acres, lot 3 with 33 acres, and lot 4 with 14.64 acres. Lot 3 lies to the south of lot 2, and if it were in a regular subdivision would be in the southwest quarter of the southeast quarter; its south line therefore coincides with the south line of the section. There is no doubt that Cross Lake lies to the east of the north part of lot 3, and comes to within 12 chains of the south section line. The original survey represents that an arm of the lake extends across the south section line slightly into section 8, and then curves to the northeast, and that another arm of the lake extends to the southeast, through section 4, and down into section 9. Therefore lots 3 and 4 are represented as being separated by an arm of the lake. The field notes call for a bayou or large lagoon, seven chains wide, on the south line of the section between lots 3 and 4, and for a lagoon or arm of Cross Lake on the section line between sections 4 and 9. The surveyors designated as creeks waterways which they crossed in other parts of the township, thus indicating that they designated differently creeks and bayous or lagoons. The field notes of the original survey call for "traverse of Cross Lake in front of section 5" and the other sections bordering on the lake. The plat of the resurvey of 1925 represents land as lying between traverse lines and the lake, and as to the lower part of lot 3 represents land up to lot 4, where the original survey called for a bayou or large lagoon, although the plat of the resurvey shows a creek on the section line which runs in a northeasterly direction into the lake.

The mean high water line of Cross Lake in 1812, when Louisiana was admitted into the Union, was 172 feet above the mean level of the Gulf of Mexico. Cross Lake is one of a chain of lakes which were created in the latter part of the eighteenth century by the formation in the Red river of what is historically known as the "Great Raft," the effect of which was to impound water above it, and to force the river to form another outlet, which flowed off through the adjoining timbered bottom lands. In the year 1836 high freshets occurred and brought down the river an unusually large amount of material which added to the size of the raft. From about 1840 to 1870 Cross Lake was deep enough to be navigated by steamboats. The raft was removed about 1872, and since its removal the raft lakes have materially decreased in size and are still decreasing. At the time of the resurvey in 1925 Cross Lake had a maximum depth of 2 feet. Much of the land that was under water before the raft was removed is now dry and in cultivation. See Geological and Underground Water Resources of Louisiana and Arkansas, p. 60 et seq.; also State v. Bozeman, 156 La. 635, 101 So. 4. The resurvey shows timber on both sides of the meander line along the lake represented by the original survey, but it does not appear from the evidence that timber was growing between such meander

line and the lake at the time such original survey was made, and it was disclosed by a topographical map that much of the land bordering on the lake in front of the land in dispute was below the 175-foot contour line, or not more than 3 feet higher than land that it is conceded was below the normal level of the lake in 1812.

Appellant offered in evidence a report of surveyors made under instructions from the Secretary of the Interior to make a preliminary investigation of the correctness of the original survey, and the Secretary's order and finding approving such report and making it the basis of his subsequent order for a resurvey; but the trial court sustained appellee's objections to the admission of these documents in evidence, and appellant excepted. The bill of exceptions discloses that the report was made up largely of hearsay, although it states that the purpose of offering the report was to show that the original survey omitted land identical in character with that included within it. The report itself is not included in the bill of exceptions, but the plat of resurvey is accompanied by a report of the same surveyors, which states that public land was omitted from the original survey.

█ Such part of Cross Lake as was reached by the east and west lines of lot 3 form the eastern boundary of the lot. 43 USCA § 752. It was therefore the duty of the surveyors who made the original survey of 1837 to extend the north line of the lot to the lake, and in like manner to extend the south line if the lake extended down that far. We are of opinion that there was substantial evidence to support the conclusion of the trial court that the lake or an arm of it, at the time the original survey was made, did extend south of the section line, and that an arm of the lake was correctly shown to separate lots 3 and 4. It is not denied that land which is temporarily covered by water is still land and ought to be surveyed. Niles v. Cedar Point Club, 175 U. S. 300, 20 S. Ct. 124, 44 L. Ed. 171. Although it be conceded that in 1812, when Louisiana was admitted into the Union, the contour line of Cross Lake was 172 feet above mean Gulf level, yet it by no means follows that in 1837 the level of the lake had not become permanently higher on account of the conditions brought about by the raft in Red river. Much of the land in dispute is below the 175-foot contour line, so that a rise in the level of the lake of 3 feet above the mean level of 1812 would cause the lake to form a water boundary along the greater part, if not the whole, of the east side of the lot: It is not to be assumed that the surveyors in 1837 intended to call for a creek. They actually called for a bayou, or large lagoon, and by their meander lines indicated that what they referred to was an arm of the lake.

█ It is consistent with the evidence as a whole that, after the raft was removed and the level of the lake had fallen, what was an arm of the lake at the time of the original survey had developed at the time of the resurvey, when the water level had become lower, into a creek that made its way into the lake. A study of the original survey does not support the contention that it was carelessly made, and the conclusion that the surveyors deliberately left out well-defined public land along the shore of the lake, in so far at least as this lot is concerned, is unwarranted. The land shown by the resurvey not to be included, if it can be said that it was not covered by water when the original survey was made, is not so great in comparison with the land that was included as to impeach such original survey. Greene v. United States (C. C. A.) 274 F. 145; Id., 260 U. S. 662, 43 S. Ct. 236, 67 L. Ed. 448. The rulings of the trial court, refusing to admit in evidence the preliminary report of the surveyors, cannot be held to be erroneous, in the absence of a showing of what was contained in that report. If nothing more was contained in it than is disclosed by the bill of exceptions, it contained the same information that appeared in the final report, which was admitted in evidence. At most, the rejected report, so far as it was not based on hearsay, contained evidence as to present conditions that were not controverted. Of course, the trial court could take judicial notice of the findings of the Secretary of the Interior, and it follows that it was unnecessary to offer them in evidence. Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 309, 23 S. Ct. 692, 47 L. Ed. 1064.

Reversible error is not made to appear by any of the assignments, and the judgment is affirmed.