## UNITED STATES v. BOYNTON et al.
### No 775.

District Court, W. D. Washington, N. D.
May 8, 1931.

Anthony Savage, U. S. Atty., and Hamlet Dodd, Asst. U. S. Atty., both of Seattle, Wash.

Baldrey & Kenyon, of Bellingham, Wash., for defendants.

NETERER, District Judge.

The United States seeks to quiet title to certain lands claimed by the defendant, purchased by him from the estate of Tsumtilano, an Indian, to whom the land was allotted December 31, 1884.

In 1855, Governor Stevens of Washington territory, and Superintendent of Indian Affairs, made a treaty with the chiefs, headmen, delegates, etc., allied Indians. Article 2 thereof provided that "tracts of land should be set apart and, as far as necessary, surveyed and marked out for the exclusive use of said Indians." In 1873 the land was surveyed by the United States to high-water mark, and on November 22, 1873, President Grant, by proclamation, ordered the tracts in issue, with other lands, to low-water mark, to be withdrawn from sale and set apart for the occupation and use of the Indians.

The land within the exterior boundaries had been devoted to the exclusive use of the allied tribes under the treaty, and lot 1, in issue, containing 16.7 acres, was allotted to Tsumtilano, an Indian, for which a restricted fee patent was issued December 31, 1884. On the 10th of April, 1928, the allottee being deceased, the land was sold after being advertised, to the defendant, he being the highest bidder. The transfer to this land was signed by the heirs of Tsumtilano and approved by the Department of the Interior.

It is the contention of the plaintiff that no lines had been run, and that the preliminary line shown on the map and by the field notes extended only to the high-water mark, and that the defendant's claim to any of the lands within the boundaries fixed by the survey below the present high-water mark is untenable.

The testimony shows conclusively that shore land has been washed away, and that the high-water mark extends further inland than it did in 1873, or in 1883, when the survey was made for allotment purposes. The chainman for the surveyor testified that the survey was made along and above the water, and the presumption is that the public officer performed his duty; and when article 2 of the treaty is considered, and the act with relation to the allotment, the testimony of all the witnesses who have lived in and about, and been along the trail over the property, and the act of the Interior Department in making reservation in the deed to defendant for road right of way from county road running across the "portage," the conclusion is inevitable that the survey is in harmony with the treaty, and did truly portray the high-water line in 1873 and 1883.

This case is distinguished from the case where the land is transferred to the meander line, and by encroachment of the water the line is moved; but, where the boundary is fixed by definite survey, the action of the water does not change the fixed line.

This case has nothing in common with United States v. Stotts, 49 F.(2d) 619, (this court, filed October 25, 1930), in which the court said: "The right of the Indians to the lands of the reservation was a common right,

and the allotment of a part of the reservation to some of the Indians does not destroy the common right to the enjoyment of the unallotted portion for any use to which it was adapted."

The right of the Indians to the unallotted portion of land is not changed, nor is the common right and the use to which it is adapted, and the boundary of the land in issue is fixed by the survey (not in the Stotts Case), which cannot be collaterally attacked. United States v. Cain-Bonness (D. C.) 215 F. 212; See, also, Cragin v. Powell, 128 U. S. 691, 9 S. Ct. 203, 32 L. Ed. 566; Russell v. Maxwell Land Co., 158 U. S. 253, 15 S. Ct. 827, 39 L. Ed. 971; Horne v. Smith, 159 U. S. 41, 15 S. Ct. 988, 40 L. Ed. 68; United States v. Lane, 260 U. S. 662, 43 S. Ct. 236, 67 L. Ed. 448.

Decree for defendant.