### LANE et al. v. UNITED STATES and four other cases.

(Circuit Court of Appeals, Fifth Circuit. June 22, 1921.)

Nos. 3536–3540.

1. **Waters and water courses ⊙⟷111—Water course and not meander line is boundary of meandered lands.**

 In a government survey of public lands bordering on a body of water or water course, a meander line is properly run for the purpose of computing acreage of fractional lots; but the lake or water course, and not the meander line, is the true boundary, and the survey is not invalidated by the failure to include within the meander lines small, irregular areas of land.

2. **Waters and water courses ⊙⟷111—United States cannot claim small areas between water and meander line of granted lands.**

 Where in the survey in 1839 of public lands bordering on a lake, which is still in existence, a meander line was run which was approximately accurate, though it included some small points of water extending into the land, and excluded some small pieces of land, the United States *held* not entitled, after the land became valuable for oil, to claim the areas of land outside the meander line as unsurveyed government land, as against the grantees of the tracts surveyed.

---

⊙⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeals and Cross-Appeals from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Suits in equity by the United States against C. W. Lane and others, against the Gulf Refining Company of Louisiana, against the Southwestern Gas & Electric Company and others, against J. M. Walling and others, and against Jessie M. La Robadierre and others, consolidated for trial. From the decrees, the defendants in the four suits first named appeal. The United States files cross-appeals therein, and directly appeals in the last-named suit. Reversed, with directions to dismiss bills.

S. L. Herold, J. A. Thigpen, and Frank J. Looney, all of Shreveport, La. (D. Edward Greer, of Houston, Tex., and Hampden Story and J. D. Wilkinson, both of Shreveport, La., on the brief), for appellants and cross-appellees Lane and others.

Robert A. Hunter, Sp. Asst. Atty. Gen., of Shreveport, La., for the United States.

S. L. Herold and J. A. Thigpen, both of Shreveport, La. (D. Edward Greer, of Houston, Tex., and Hampden Story and J. D. Wilkinson, both of Shreveport, La.. on the brief), for appellees La Robadierre and others.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. These suits were brought by the United States to recover several small tracts of land in Caddo parish, La., and also to compel an accounting for oil and gas produced therefrom by appellants. The lands lie in separate tracts along the edge of Ferry Lake, in township 20 north of range 16 west, Louisiana meridian. This township was first surveyed in 1839 by United States Deputy Surveyor A. W. Warren, and the plat filed by him represents several fractional sections bordering on the lake. According to that plat the lands in litigation were included within these fractional sections.

Because of the discovery of oil thereon the township was resurveyed in 1917, under the direction of Arthur D. Kidder, Supervisor of Surveys for the General Land Office. By this later survey the lands in litigation are represented as lying between the meander lines of Warren's survey and Ferry Lake, and are designated as new subdivisions omitted from Warren's survey. The fractional sections surrounding the lake had been sold and patented from time to time, and acquired by appellants long before the resurvey of 1917 was made.

There are no disputed questions of fact. It was admitted by stipulation that Kidder's survey was accurately made, and that Kidder correctly re-established and reproduced Warren's survey; that the contour line of Ferry Lake, at mean high water, in 1812, when Louisiana was admitted into the Union, in 1839, when Warren made his survey, and in 1917, when Kidder made his survey, was 173.09 feet above mean Gulf level; that all the tracts of land in litigation lie above that elevation, and are upland in character; and that Ferry Lake is, and was in 1812 and 1839, a navigable body of water. It was also shown beyond question that Warren in his survey ran the section lines

to, and accurately established corners and set meander posts on, the contour line of Ferry Lake.

In running out his meander lines, Warren did not always follow the exact contour of the lake, but he approximated it very closely in so far as the lands involved in these suits are concerned. In some instances, irregular areas of land which jut out into the water are outside the meander lines, and in other instances, where the land sharply recedes, water is inside the meander lines. Very little difference in acreage between the land so excluded and the water so included is shown by the testimony. In at least one of the cases the area of water included exceeds the area of land excluded.

In the first mentioned of these suits Warren's survey represents the land in that fractional quarter quarter section as containing 26.80 acres; Kidder's survey adds as a new subdivision 5.67 acres. In the second suit, Warren's survey represents 114.80 acres; Kidder's survey adds 11.49 acres. In the third suit, Warren's survey represents 155 acres; Kidder's survey adds 27.87 acres. In the fourth suit, Warren's survey represents 23 acres; Kidder's survey adds 12.72 acres. In the fifth and last suit, Warren's survey represents 83.75 acres; Kidder's survey adds 22.71 acres. It is for these additional acres the government sues.

The cases were consolidated, and the court entered decrees sustaining the right of the government to recover the lands, and also holding appellants liable to account for various amounts realized from the sale of oil and gas, but allowing credit for the costs of production. The government by cross-appeal in the first, second, third, and fourth suits contends that appellants should not be allowed to deduct these expenses, but should be held liable as willful trespassers. In the fifth suit, that of United States v. La Robadierre and the Gulf Refining Company, No. 3540, the original defendants have not appealed, but the government by direct appeal assigns as error the deduction of expenses of operation and the failure to hold the Gulf Refining Company liable in solido with the other defendant.

[1] It is the contention of the United States that the lands in litigation, lying between the meander lines of Warren's survey and Ferry Lake, are public lands which were never surveyed until 1917. Appellants, on the other hand, assert title as owners of the fractional sections.

Section 2396 of the Revised Statutes (Comp. St. § 4804) deals with the boundaries and contents of public lands, and provides that boundary lines shall be ascertained by running straight lines from established corners to opposite corresponding corners, except that, in those portions of a fractional township where corresponding corners cannot be fixed, the boundary lines shall be ascertained by running from established corners "to the water course, Indian boundary line, or other external boundary of such fractional township." There is no other provision of law for the running of meander lines along a water course, but they are usually run by surveyors for the purpose of computing acreage. It is proper that they should show the sinuosities of the banks of the water course; for the water course, and not

the meander line, is the true boundary. St. Paul & P. Railroad Co. v. Schurmeier, 7 Wall. 272, 19 L. Ed. 74; Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. 819, 840, 35 L. Ed. 442; Producers' Oil Co. v. Hanzen, 238 U. S. 325, 35 Sup. Ct. 755, 59 L. Ed. 1330.

It was Warren's duty to bound the fractional sections on the lake, and it is apparent from his survey and field notes that it was his intention to do so. The survey is not invalidated by the failure to include within the meander lines small, irregular areas of land. In Mitchell v. Smale, supra, the survey called for 4.53 acres, but it was held that title to 25 additional acres also passed by the patent. In that case the Supreme Court said:

"The difficulty of following the edge or margin of such projections, and all the various sinuosities of the water line, is the very occasion and cause of running the meander line, which by its exclusions and inclusions of such irregularities of contour produces an average result closely approximating to the truth as to the quantity of upland contained in the fractional lots bordering on the lake or stream. The official plat made from such survey does not show the meander line, but shows the general form of the lake deduced therefrom, and the surrounding fractional lots adjoining and bordering on the same. The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are bounded by the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed, and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow."

Meander lines, and not water courses, are held to be boundaries, where there is no body of water within a reasonable distance therefrom, as in Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. Ed. 68; Producers' Oil Co. v. Hanzen, supra; or where there is no body of water at all, as in French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800; Gauthier v. Morrison, 232 U. S. 452, 34 Sup. Ct. 384, 58 L. Ed. 680; Chapman & Dewey Lumber Co. v. St. Francis Levee District, 232 U. S. 186, 34 Sup. Ct. 297, 58 L. Ed. 564; and Lee Wilson & Co. v. United States, 245 U. S. 24, 38 Sup. Ct. 21, 62 L. Ed. 128; or where there is gross fraud, as in Security Land & Exploration Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662. These cases are relied upon by the government, but in our opinion they are inapplicable to the facts under consideration. In none of the cases cited on the government's briefs is the rule stated in Mitchell v. Smale overruled or even modified; but, on the contrary, in several of them that case is cited with approval.

Here the water course was in existence and was actually meandered. There is no suspicion or suggestion that Warren's survey of the lands in litigation was fraudulent. That part of his survey which is in question in these cases was made with a fair degree of accuracy, and for the purposes of computing the acreage and of showing the sinuosities of Ferry Lake as a boundary. It is not impeached by the fact that a subsequent survey, made with great minuteness because of the discovery of oil, disclosed comparatively slight variations from the established boundary.

There being no appeal by the original defendants in United States v. La Robadierre et al., No. 3540, the decree in that case is affirmed. In the other cases, the decrees are reversed on the original appeals, with directions to dismiss the bills of complaint, and the cross-appeals are dismissed.

⬅⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes