## CORDELL PETROLEUM CO. v. MICHNA et al.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1921.)

No. 3602.

1. **Boundaries ⊚⟹3(4)—Calls for river as natural boundary prevail over calls for courses and distances.**

In the absence of mistake or fraud, calls for courses and distances in a survey yield to calls for a river as a natural boundary.

2. **Boundaries ⊚⟹3(4)—Survey calling for river as boundary sustained.**

Title under a survey calling for a river as one of the boundaries *held* to prevail over a title derived under a later survey purporting to be of a tract lying between the earlier survey and the river.

Appeal from the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Suit in equity by the Cordell Petroleum Company against E. Michna and others. Decree for defendants, and complainant appeals. Affirmed.

W. D. Gordon, of Beaumont, Tex., and K. C. Barkley, of Houston, Tex., for appellant.

B. K. Goree and Wm. E. Allen, both of Fort Worth, Tex., and P. B. Cox, I. W. Keys, Tarlton Morrow, and W. F. Weeks, all of Wichita Falls, Tex., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a final decree dismissing appellant's bill of complaint, in which the following averments were made:

That on May 6, 1889, the state of Texas by letters patent conveyed to Newton S. Walton a tract of land described in the A. A. Durfee survey; that Walton died in 1894; and that appellant purchased from his devisees certain described land included within the said Durfee survey.

That Walton by his will appointed Robert J. Hill and Jefferson Johnson independent executors, with power to sell real estate which in their opinion could not be partitioned; that Hill failed to qualify as executor; but that Johnson qualified and acted as sole executor, as it is conceded he had the right to do under the terms of the will.

That on April 22, 1913, Johnson, as independent executor, for a consideration of $100, executed a deed to one D. P. Taylor of all the land in the Durfee survey; that appellees claimed to have acquired title by deed from Taylor to appellant's land in the Durfee survey, and were exercising acts of ownership; and that some of them had placed on record leases and documents which constituted clouds upon appellant's title.

That the deed from Johnson to Taylor was void, for the reasons that Johnson's authority to make it had long since ceased; that the consideration was inadequate; and that title had theretofore become vested in the devisees under Walton's will.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

That oil had been discovered in the vicinity of the land; that appellees were executing leases and conveyances thus casting clouds upon appellant's title, and were striving to prevent by force and violence the exercise of acts of ownership by appellant.

The bill prayed for an injunction restraining appellees from interfering with appellant, and from committing further trespasses upon the land; that the deeds under which appellees claim be canceled as clouds upon appellant's title, and for general relief.

Appellees pleaded title (1) under the deed from the independent executor to Taylor; (2) by adverse possession under the Texas statutes of limitations; and (3) under prior letters patent, issued by the state of Texas in 1879, of a tract of land described in the F. W. Huseman survey, which included the land in suit. It was thereupon averred that the later patent of the land described in the Durfee survey was void.

Walton's will contained the following instructions:

"It is my desire that they (the executors) manage my business affairs as they may deem best and when they deem realty not subject to partition they are authorized to sell the same. * * * It is my desire that the probate court have nothing to do with my property further than as required by law, to wit, probating will and filing of an inventory. * * * As to the Haskell Co. lands I own an undivided three-fourth interest therein and W. M. Walton my father the other one-fourth. I have expended much money on these lands and these should be held for some years yet. The Haskell lands are the Peter Allen 2/3 Lea. & Labor."

Appellant's deed from the devisees under this will was dated July 26, 1919, at a time when the discovery of oil upon the lands in litigation was considered probable.

In the year 1861, R. F. Luckett, district surveyor for the state of Texas, made surveys of a number of tracts of land south of Red river in Wichita county, Tex., among them being survey 819, in the name of William Droddy. The field notes of the Droddy survey were not introduced in evidence, but the survey is represented by a map filed in the General Land Office as being bounded on the north by Red river, on the west by survey 820, in the name of Lewis Powell, and on the east in part by survey 818, in the name of T. E. & L. Co.

The field notes of the Huseman survey were introduced in evidence, and are as follows:

"Beginning at the N. W. Cor. of Sur. No. 818, Texas Land & Emigration Co. Thence south 4845 vrs. a stake in Prairie; thence west 1900 vrs. a stake in E. B. Line of Lewis Powell's sur.; thence north with said Powell 3925 vrs. a stake in bank of Red river; thence down said river with its meanders N. 64° E. 2111 vrs. to the beginning.

"Dated May 12th, 1879."

The Huseman survey is given the number 819, which is represented on the official surveyor's map as being the number of the Droddy survey.

Survey 818 is bounded on the east by survey 812, in the name of Elizabeth Stanley, and the Stanley survey in turn is bounded on the east by survey 810, in the name of William R. Rivers. The field notes of each of these surveys were introduced in evidence. The field notes

of the survey lying farthest east, which is survey 810, represent its western line as "beginning at a stake on the bank of Red river"; thence south and east and north "to a stake on the bank of Red river"; thence "up the river with its meanders to the place of beginning." The field notes represent the Stanley survey, 812, as beginning at the northwest corner of survey 810, and thence "up the river with its meanders," to a "stake in bottom chittim," etc. The field notes represent the T. E. & L. Co. survey, 818, as lying "on the south bank of Red river," and as "beginning at the upper or N. W. corner of No. 812, a stake in river bottom a chittim"; thence "up the river with its meanders" to a "stake in bottom." The field notes represent survey 820, in the name of Lewis Powell, as "lying on the south bank of Red river," and as "beginning at the upper or N. W. corner of survey No. 819 in the name of William Droddy. * * * Thence S. 63¼° west up the river." The description of the Durfee survey in the patent to Walton is as follows:

"Beginning at the N. E. corner of F. W. Huseman survey and the S. W. corner of Sur. of 1280 acres Sur. for Lucinda Meadows; thence N. 80 W. with W. line of said Meadow Sur. 1309 varas a stake on the bank of the river the N. W. cor. of said Meadow. Thence up the river with its meanders S. 66½° W. 526 vrs. S. 42° W. 1350 vrs.

"S. 40° W. 1175 vrs. a stake on bank of the river in W. line of L. Powells survey.

"Thence N. 68° E. 350 varas the N. E. corner of said Powells survey an elm brs. S. 38½° W. 143 vrs.

"Thence N. 71° E. 2115 vrs. the N. E. corner of said Huseman and the beginning."

The field notes of the Lucinda Meadow survey, referred to in the foregoing description of the Durfee survey, were also in evidence, and purport to represent a tract of land lying between the Rivers, Stanley and T. E. & L. Co. surveys (being surveys 810, 812, and 818), and the Red river, just as the land in the Durfee survey patented to Walton is represented to lie between the Huseman and a part of the Powell surveys (being surveys 819 and 820) and the Red river.

It was undisputed that the common line between the Powell and the Huseman surveys extends to the bank of the Red river. There was some testimony that the eastern boundary line of the Huseman survey did not extend to the river, but it is apparent from the testimony that this conclusion was arrived at by following course and distance, and by ignoring the call of the field notes for the meanders of the river. It was not claimed that the northeast corner was located by reference to any witness trees, marks, or bearings called for by the field notes.

The District Court found from the evidence that the Red river was the northern boundary line of the Huseman survey, and therefore included the land involved in this suit, and that consequently the junior patent to Walton, which also included the land in suit, was void. The court further held that the suit was barred by the Texas statutes of limitations. No finding was made upon the validity of the deed from the independent executor to Taylor.

Both the Huseman and the Durfee surveys are represented as having a river boundary, and in case of conflict, of course, the Huseman or senior survey should be upheld, and the Durfee or junior survey declared void.

Each of the five surveys of 1861 above referred to is represented on the plat as having the Red river as a northern boundary. The field notes of all except the Droddy survey were in evidence, and each of them were represented as being on the south bank of the Red river. It was stated in Schnackenberg v. State (Tex. Civ. App.) 229 S. W. 934, which was a case dealing with these surveys, that the field notes of the Droddy survey had been lost; but, as pointed out in that case, the survey can be located by its companion surveys, and it is no doubt true that the Huseman survey took the place of the Droddy survey. The field notes of the Huseman survey also give it a river boundary. Its west boundary line extends to the river, and from that point the call of the field notes is "thence down said river with its meanders N. 64° E. 2111 vrs. to the beginning."

[1] It is made to appear, therefore, upon consideration of the field notes and plats of official surveys, that Red river was represented to be the northern boundary of the Huseman and companion surveys made in 1861; and it is conceded, as it must of necessity be conceded in the absence of mistake or fraud, that the general rule is that calls for courses and distances yield to calls for the river as the natural boundary. Some of the cases in the Supreme Court of the United States so holding are cited in Greene et al. v. United States (C. C. A.) 274 Fed. 145, and in Lane et al. v. United States (C. C. A.) 274 Fed. 290, decided at the last term of this court. This familiar principle of law has been recognized in Rosetti v. Camille (Tex. Civ. App.) 199 S. W. 526, and recently applied by the Court of Civil Appeals of Texas to the Huseman survey, in Schnackenberg v. State, supra.

[2] Appellant contends for an exception, and for giving effect to the calls for courses and distances to the exclusion of calls for a river boundary, because it is claimed the evidence shows that the surveyors who testified for appellant actually traced out the north line of the Huseman survey and found vacant land between it and Red river. We are of opinion that the contention is untenable. No surveyor who testified for appellant claimed to have made an independent investigation in an effort to locate the northeast corner of the Huseman survey. They all assumed a point away from the river to be the northeast corner, and upon that assumption arrived at the conclusion that there was vacant and unappropriated land between the survey and the river. In other words, they did not trace the footsteps of the original surveyor as claimed in the argument. No fraud in the original survey is claimed, and no mistake in it is shown by the evidence. When taken in connection with its companion surveys, the Huseman survey is conclusively shown by the evidence to have included the lands involved in this suit. It therefore becomes unnecessary to consider the evidence relating to the claims of title by appellees based upon statutes of limitations and upon the validity of the deed from Walton's inde-

pendent executor to Taylor, which was prior in time to the deed under which appellant claims.

Error is not made to appear by any of the assignments of error, and the decree is therefore affirmed.