# STATE OF OKLAHOMA *v.* STATE OF TEXAS, UNITED STATES, INTERVENER.

## IN EQUITY.

No. 13, Original.   Argued April 20, 1925.   Decided May 11, 1925.

1. Description of a boundary in field notes and patent as "up the river", *construed*, in the light of connected surveys and a plat, as calling for the river as a boundary. P. 255.
2. A natural boundary like a river controls courses and distances. *Id.*
3. A river bank boundary, whether private or public, changes with erosion and accretion. P. 256.
4. Only where conduct or statements are calculated to mislead a party and are acted upon by him in good faith to his prejudice can he invoke them as a basis of an estoppel; and if they relate to a real property title the condition of which is known to both parties, or both have the same means of ascertaining it, there can be no estoppel. *Id.*

ON exceptions to the special master's report on conflicting claims to royalty interests in proceeds held by the receiver in this cause derived from oil wells in a parcel of land on Red River in Texas. Exceptions overruled.

*Mr. C. F. Greenwood* for Durfee Mineral Company, in support of exceptions.

*Mr. A. H. Carrigan* for Roberts and Britain, *contra.*

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

As an incident of the receivership in this cause it becomes necessary to determine conflicting claims to the royalty interest in the impounded proceeds of the oil taken from wells Nos. 152, 153 and 154. 258 U. S. 574, 581. These wells are immediately south of the south bank of Red River, and therefore in the State of Texas. 261 U. S. 340. The claimants are T. P. Roberts and A. H. Britain on the one hand and the Durfee Mineral Company on the other. Both claims are founded on Texas surveys—that of Roberts and Britain on the Lewis Powell survey made in 1861 and patented in 1868, and that of the Durfee Mineral Company on the A. A. Durfee survey made in 1886 and patented in 1889.

The principal question is whether the Powell survey extended northward to the south bank of Red River, leaving nothing between it and the bank, or stopped short of the bank, leaving a narrow wedge-shaped strip between it and the bank. The Durfee survey was made 25 years later on the assumption that the Powell survey left such a strip there. The three wells are in the wedge-shaped strip or land accreted to it. A secondary question is whether, if the Powell survey included this strip, the present owners of that survey are estopped from claiming the strip, and therefore the royalty interest, as against the Durfee Mineral Company.

January 19, last, the conflicting claims were referred to a special master with directions to take the evidence and report the same with findings of fact, conclusions of law and recommendations for a decree. 267 U. S. 7, par. 8. The master made his report with findings, conclusions and recommendations favorable to the claim of Roberts and Britain; the Durfee Mineral Company excepted; and both claimants have been heard in briefs and oral argument on the report and exceptions.

The master found that the Powell survey fronted on the river and had the south bank as its northerly boundary. In the exceptions it is insisted that this finding rests on an erroneous interpretation of the survey. For reasons which will be explained, we think it rests on a right interpretation.

The Powell was one of five surveys made by the same surveyor on the same day—May 8, 1861. These surveys were contiguous and were in the form required of surveys fronting on a stream like Red River.[1] They were also so tied together that the interpretation of one involves an examination of the others.

The surveyor began with the easterly one and proceeded westerly until he had finished all five. His field notes described all as " on the south bank of Red River," and the drawings or plats accompanying the field notes represented all as fronting on the river and having its irregular line as a northerly boundary. The field notes of all, excepting the Powell, also described the northerly line as beginning at the northwest corner of the adjoining survey on the east and running " thence up the river with its meanders " in a stated direction a given distance to a stake or mound " in the bottom " or " on the bluff " at the other end. The Powell was the fourth survey in the line, and so was between others the field notes of which said

---

[1] Vernon's Sayles' Civ. Stat. §§ 5338, 5339.

" thence up the river with its meanders." The field notes of the Powell transmitted to the state land office, and on which the patent issued, were like the others, save that they said " thence up the river " and omitted " with its meanders." But the field notes entered in the appropriate local records said " thence up the river with its meanders." Doubtless the discrepancy resulted from a clerical error in preparing the duplicate sent to the state land office.

We put aside the question of the effect to be given to the entry in the local records; for the phrase " thence up the river " in the field notes sent to the state land office and in the patent evidently mean up the natural course of the river. *Schnackenberg* v. *State,* 229 S. W. 934, 937; *Stover* v. *Gilbert,* 247 S. W. 841, 843; *Brown* v. *Huger,* 21 How. 305, 320. Of course, that phrase must be read with the declaration that the survey was on the south bank of the river and in the light of the drawing or plat representing the river as the northern boundary.

We think it apparent that the survey was intended to call, and did call, for the river as a boundary and that controlling influence must be given to that call rather than to the course and distance given for that boundary. The courts of Texas, in common with other courts, recognize and apply this rule of interpretation. *Anderson* v. *Stamps,* 19 Tex. 460, 465–466; *Stafford* v. *King,* 30 Tex. 257, 271–272; *Schnackenberg* v. *State, supra; Stover* v. *Gilbert, supra,* and cases there cited; *Cordell Petroleum Co.* v. *Michna,* 276 Fed. 483. The evidence, as pointed out by the master, does not admit of the conclusion that the surveyor mistook a bayou or other body of water for the river, or that the river was not in immediate proximity to the upper corners of the survey when it was made (see *United States* v. *Lane,* 260 U. S. 662); so authorities rejecting an obviously mistaken call for a river or lake are not in point. See *Jeems Bayou*

*Fishing and Hunting Club* v. *United States*, 260 U. S. 561.

The master next found that the land lying between the south bank as now existing and that bank as existing at the time of the Powell survey is accretion to the bank, and therefore part of the Powell tract. Exception is taken to this finding on grounds that are not made very clear. A short statement of what the evidence tends to show in this connection will make it plain that the exception must be overruled. During the 25-year period intervening between the Powell survey and the Durfee survey there was a large addition to the south bank, but in later years most of that addition was cut away. At present the bank extends a little farther northward than it did when the Powell survey was made. These changes all resulted from the natural and gradual processes of accretion and erosion, which are rather pronounced in Red River. Its currents and channels shift from one side of its wide bed to the other, gradually cut away one bank and build up the other, and later on reverse that action. Where, as here, a boundary bank is changed by these processes the boundary, whether private or public, follows the change. *Oklahoma* v. *Texas*, 260 U. S. 606, 636; *Oklahoma* v. *Texas*, 265 U. S. 493, 499.

The necessary result of the two findings we have mentioned is that there was no public land between the Powell tract and the river to which the Durfee survey and patent could give any right.

The next exception is to the master's conclusion that there was no sufficient evidence on which to invoke an estoppel against the assertion by Roberts and Britain of title to the strip in controversy or to the royalty interest arising therefrom.

The grounds on which an estoppel is invoked are that Specht, from whom Roberts acquired the Powell tract, had theretofore made and distributed a plat of that tract,

along with others, whereon it was represented as not extending to the river bank; that Roberts after getting the title made and distributed a plat with a like representation of the northern boundary; that Roberts pointed out to the Durfee Company and its predecessors as the northern boundary a line running south of the land in dispute; and that, acting upon those plats and Roberts' statement, the Durfee Company and its predecessors purchased the land in dispute from a claimant under the Durfee survey and paid a valuable consideration for it. The evidence bearing on the asserted estoppel is in several respects conflicting. It is fully and fairly reviewed by the master in his report and need not be restated here. The master concluded, and we agree with him, that as a whole the evidence shows that the Durfee Company and its predecessors purchased with full knowledge of the record title, including the surveyor's field notes before described; that the plats made by Specht and Roberts were too vague to have been relied upon as a representation of the nature or location of the northern boundary; that the conveyance from Specht to Roberts, which was part of the record title, described the Powell tract as extending to the meanders of the river; that the Durfee Company and its predecessors in purchasing did not in fact rely upon the Specht and Roberts plats or any statement of Roberts, but upon a report made by their attorneys based on the record title, including the field notes; and that the alleged statement by Roberts to them, if made, was made after they had purchased, gone into possession and paid the purchase price. In this situation the asserted estoppel must fail. Only where conduct or statements are calculated to mislead a party and are acted upon by him in good faith to his prejudice can he invoke them as a basis of such an estoppel. And if they relate to the title of real property "where the condition of the title is known to both parties, or both have the same means of

55627°—25——17

ascertaining the truth, there can be no estoppel." *Brant* v. *Virginia Coal & Iron Co.,* 93 U. S. 326, 336–337; *Crary* v. *Dye,* 208 U. S. 515, 521; *Westbrook* v. *Guderian,* 3 Tex. Civ. App. 406; *Hunter* v. *Malone,* 49 Tex. Civ. App. 116, 121; *Bender* v. *Brooks,* 130 S. W. 653, 657; *Barclay* v. *Dismuke,* 202 S. W. 364, 365; Pomeroy's Eq., 4th ed., sec. 807. There was no laches on Roberts' part in asserting his claim after the company purchased. He soon went to the land with a surveyor to run out his lines and make his claim known, but was prevented from doing so by an armed guard. With reasonable promptness he brought a suit in a court of competent jurisdiction to enforce his rights. Proceedings in that suit were soon suspended by reason of this receivership, and he promptly asserted his claim here.

An order will be entered overruling the exceptions, confirming the master's report and directing payment of the royalty interest to Roberts and Britain. The costs will be adjusted in the order.

> *Claim of Roberts and Britain sustained.*
> *Claim of Durfee Mineral Company denied.*