## JENKINS v. UNITED STATES.

District Court, D. Rhode Island. November 10, 1927.

### No. 1943.

1. **Army and navy** ☞51½—Evidence held to show that soldier in France made application in due form for war risk insurance.

Evidence *held* sufficient to establish the fact that a soldier in France a short time prior to his death made application in due form for war risk insurance in the amount of $10,000, and named his mother as beneficiary.

2. **Army and navy** ☞51½—Limitation of action for war risk insurance runs from time of "disagreement" as to claim between bureau and claimant (World War Veterans' Act 1924, § 19 as amended by Act March 4, 1925, § 2 [38 USCA § 445]).

Under World War Veterans' Act 1924, § 19, as amended by Act March 4, 1925, § 2 (38 USCA § 445 [Comp. St. § 9127½—19]), a cause of action in a claim for war risk insurance does not arise until there is a "disagreement" as to the claim between the bureau and claimant, and limitation runs from that time.

3. **Army and navy** ☞51½—Claimant to war risk insurance held not estopped to prosecute her claim by acceptance of automatic insurance, while it was pending in department.

Plaintiff, who, after presenting her claim for $10,000 war risk insurance for death of her son, and while it was pending, at the suggestion of the bureau, and being without advice of counsel, accepted automatic insurance under War Risk Insurance Act, § 401, as added by Act Oct. 6, 1917, § 2 (Comp. St. § 514uu), *held* not to have waived, nor to be estopped to prosecute, her claim for contract insurance after its final disallowance.

At Law. Action by Annie M. Jenkins against the United States. Judgment for plaintiff.

Charles Bird Keach, of Providence, R. I., for plaintiff.

Randolph C. Shaw, Asst. Counsel, Veteran's Bureau of Washington, D. C., and Russell P. Jones and Fred B. Perkins, Asst. U. S. Attys., both of Providence, R. I., for the United States.

LETTS, District Judge. This is an action at law, brought by Annie M. Jenkins to recover insurance alleged to have been taken out by her son, Charles E. Jenkins, Jr., in December of 1917, under the provisions of the War Risk Insurance Act of 1917 (Comp. St. § 514a et seq.) and the departmental regulations issued thereunder.

It is alleged that the application made by said Jenkins was for insurance in the amount of $10,000 and that the beneficiary named was his mother, Annie M. Jenkins, the claimant in this suit.

It appears to be undisputed that Jenkins was a member of Battery A, 103d Field Artillery, that this organization was transported overseas during the month of October, 1917, and that Jenkins was killed in the course of duty at or near Camp de Coetquidan January 1, 1918.

At the time of Jenkins' death there was sufficient pay owed to him from which premiums upon a policy of insurance to the amount of $10,000 could have been deducted in accordance with the regulations and practice adopted by the government in such cases.

In the trial of the case, and in the brief filed thereafter, counsel for the government appeared to concede that, if the deceased made application for insurance upon the regulation form and the same was delivered to a representative from the General Headquarters, the contractual rights of the claimant would be the same as if the application had been received by the Bureau of War Risk Insurance and the certificate thereon actually issued. This apparent position of government's counsel appears to be justified from the language of the statute (40 Stat. 409, § 400 [Comp. St. § 514u]), which provides that:

" * * * The United States, upon application to the bureau and without medical examination, *shall* grant insurance, * * * " etc.,

—and the practice of the bureau in considering the application, together with the provisions of the statute and regulations thereunder, as the contract.

Early in 1918, and about a month after she received the official notice of her son's death, the claimant made application to the Bureau of War Risk Insurance for the benefit of a $10,000 policy in her behalf, and while the consideration of this application was pending she received communication from the bureau, under date of August 6, 1918, inclosing a blank or form upon which to make application for automatic insurance. This application was made by the claimant, and under date of August 21, 1918, she was advised that an award of $25 per month from the 2d day of January, 1918, had been made to her.

It appears, also, from the testimony and exhibits in the case, that at different intervals between the date of the filing of her claim for the $10,000 of insurance and March of 1927 communications were exchanged between the claimant and the bureau in regard to the consideration of the claim, and in respect to affidavits and other evidence which the claimant from time to

time furnished or caused to be furnished to the bureau.

Under date of March 25, 1927, counsel for the claimant was advised that the evidence on file was considered insufficient to establish as a fact that Jenkins applied for United States government insurance while in service. Mr. Sasser, insurance advisor to the bureau, testifying on behalf of the government, stated that this letter of March, 1927, represented the final decision in the case and a disagreement between the claimant and the bureau. Suit was instituted by the claimant April 6, 1927, and the amended petition now before the court was filed July 19, 1927.

Beyond this, the other important facts involved were in dispute. It appears from the testimony given and the contentions of counsel at the trial that there are three issues for the court to determine, one of fact, and two of law:

(1) Did Charles E. Jenkins, Jr., during December of 1917, make application for insurance in the amount of $10,000 and name his mother as beneficiary?

(2) If such insurance was duly taken out, is the claimant barred by the statute of limitations?

(3) Did the claimant, because of applying for and accepting so-called automatic insurance under the provisions of the act, become estopped in respect to her present claim, or by accepting automatic insurance waive her rights, if any, thereunder?

[1] The claimant, in support of her contention that Jenkins made application in due course for insurance in the amount of $10,-000, naming her as beneficiary, produced several witnesses who belonged to the same organization, and who were present with the deceased in France.

Witness Adams, who was first sergeant of A Battery of the 103d Field Artillery, and who knew the deceased well, testified that Jenkins, around the middle of December, 1917, during the time that attention was being given to the insuring of members of that company, made application for the insurance alleged. He testified that Jenkins filled out the application for the insurance in the presence of himself, the battery clerk, and a representative from General Headquarters, and that the application blanks then filled out were delivered to the representative from G. H. Q. His testimony was unqualified in respect to the presence at the time of the filling out of the application of himself and the battery clerk, but not positive in regard to the presence at the time of the G. H. Q. representative.

Witness Farrell, who was chaplain of the 103d Field Artillery and who knew the deceased, testified to an investigation or inquiry made by him, pursuant to a military order of his superior, to ascertain, subsequent to the death of the deceased, whether or not he was insured. He testified that he went to the company headquarters, made inquiry of the one in charge of the office of the clerk, and that the record there then showed that Jenkins had made application for insurance, naming his mother as beneficiary, and in the amount of $10,000.

It appears also in evidence that the claimant received a letter from her son, written shortly before December, 1917, wherein he stated to her that, "when you receive this letter, I will have my $10,000 insurance for your benefit." This communication is, of course, of little evidentiary value, beyond indicating an intention and attitude of mind, close to the time when it is claimed the application was made, which was wholly consistent with the testimony of the witnesses.

The testimony of the other witnesses in support of the claimant's contentions is at most corroborative, and some of it, particularly that of witness Barker, when analyzed, has little probative value.

The testimony and evidence presented by the government in opposition to the testimony presented by the claimant is largely negative. There was introduced a transcript of a portion of the pay roll for December of 1917 of Battery A, 103d Field Artillery, which included the name of Charles E. Jenkins, Jr. This record disclosed no deduction entered for war risk insurance premiums.

Witness Sasser testified that he had caused to be made a thorough investigation of the records of the Bureau of War Risk Insurance, and found no record that Charles E. Jenkins, Jr., had applied for insurance. There was also introduced on behalf of the government evidence that certain members of Battery A of the 103d Field Artillery made application for insurance during the month of January of 1918. Oral testimony had been presented by the claimant that the battery was 100 per cent. insured as of January 1, 1918.

It appeared from the testimony, apparently without contradiction, that, because of the conditions existing in France relative to the handling of applications for war risk in-

surance during the period in question, many applications were lost, and that in such instances new or duplicate applications were filed. That fact would appear to be a possible reconciliation of the testimony presented by the claimant that 100 per cent. of the battery had applied for insurance before Jenkins' death with the evidence adduced in respect to that point by the government.

In view of the positive testimony presented by the claimant that Charles E. Jenkins, Jr., did in due form make application for the insurance in question, and taking into account the bearing and character of the witnesses, it is not felt that the evidence introduced on behalf of the government satisfactorily meets it.

The court therefore finds as a fact that Charles E. Jenkins, Jr., did during the month of December of 1917 make application in due form for war risk insurance in the amount of $10,000, and that he named his mother, the complainant, Annie M. Jenkins, as beneficiary thereunder.

[2] We next come to the question as to whether the claim is barred by the statute of limitations. There being no limitation specified in the World War Veterans' Act (38 USCA § 421 et seq. [Comp. St. § 9127½—1 et seq.]), under which this suit is brought, the application of the Rhode Island statute, providing that actions of this character must be brought within six years, is the only limitation to be considered. This statute, so far as relevant, provides as follows:

"* * * All actions of debt founded upon any contract without specialty * * * shall be commenced and sued within six years next after the cause of action shall accrue, and not after." Chapter 334, § 3, Gen. Laws R. I. 1923.

Section 19 of the World War Veterans' Act, as amended (38 USCA § 445 [Comp. St. § 9127½—19]), provides in part as follows:

"*In the event of disagreement* as to claim under a contract of insurance between the bureau and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the District Court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is hereby conferred upon such courts to hear and determine all such controversies."

This provision has been construed to mean that not until there be a disagreement between the claimant and the bureau does the court have jurisdiction to entertain or decide the controversy. Reece v. U. S. (D. C.) 17 F. (2d) 856.

The court finds from the testimony as a fact that the disagreement conferring jurisdiction upon this court under the terms of said act arose on the 25th of March, 1927.

This court is of the opinion that no cause of action accrued, within the meaning of the Rhode Island statute of limitations, until there was a court with jurisdiction to hear and determine the petitioner's claim.

The rule is correctly stated in the case of Collier v. Goessling (C. C. A.) 160 F. 604, 611, as follows:

"To start the running of a statute of limitation there must be some one capable of suing, some one subject to be sued, and a tribunal open for such suits."

The circumstances of this case are not analogous to the case where some preliminary step needs to be taken before a suit may be instituted, and where the taking of that step and the performance of the condition precedent is entirely within the power of the claimant. In that class of cases the law is settled that the one having within his power the performance of the condition precedent cannot suspend the running of the statute through delay. In the present case it was within the power of the officials of the bureau at any time to terminate negotiations by unqualified disallowance, and to have thereby caused the action to accrue within the meaning of the Rhode Island statute of limitations. It was not, generally speaking, within the power of the claimant, or to be expected of her, to terminate negotiations and extract from the bureau a final disallowance.

The court holds that the claim is not barred by the statute of limitations.

[3] We now come to the third and last question: Did the claimant, by accepting the automatic insurance, under the circumstances become estopped, or waive her rights to the insurance in question?

The claimant made application direct to the bureau for the insurance in question shortly after the receipt of news of her son's death. Not until 1925 did she have the advice of an attorney.

While the court believes that the bureau, through its officials, acted throughout the negotiations with complete good faith and fairness, it does appear from claimant's testimony that she understood, though perhaps erroneously, that the bureau did not wish her to employ counsel.

The claimant was advised by the bureau that there was no record of the son having made application for war risk insurance, and was supplied by the bureau with a form upon which to make application for automatic insurance, which was afterward awarded her upon proof of need or dependency. For a long time thereafter the bureau continued to consider her claim for the $10,000 of insurance applied for. It does not appear that the claimant in the first instance solicited the automatic insurance. It was first suggested to her, and forms for applying for the same provided, by the bureau. Nothing which the claimant did misled or concealed from the bureau facts resulting in prejudicial action on its part. It is clear from the record that the claimant, in accepting the automatic insurance, did not do so with the intention or expectation that she was waiving her rights in respect to the insurance here claimed. Claimant testified that she thought "they would give me that until they straightened out the $10,000 insurance, and I believed they would, or I would not have accepted it."

There are present in this case no facts which would warrant the conclusion that the claimant is estopped. The law upon this point is succinctly stated in Murphy v. Paine (D. C.) 15 F.(2d) 570, 572:

"It has been well said that estoppel is a shield, and not a sword. It is available for protection, and cannot be used as a weapon of assault. See Dickerson v. Colgrove, 100 U. S. 578, 580, 581, 25 L. Ed. 618. Estoppel may be invoked where conduct or statements have positively misled a party and are acted upon by him in good faith, to his prejudice. Where the conditions are known to the parties, or they both have the same means of ascertaining the truth, and where they are under a duty to ascertain the truth, there can be no estoppel"—citing also Oklahoma v. Texas, 268 U. S. 252, 257, 45 S. Ct. 497, 69 L. Ed. 937; Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 335, 23 L. Ed. 927.

It is clear, from the provisions of section 401, War Risk Insurance Act (40 Stat. 409 [Comp. St. § 514uu]), that the rights created thereunder to so-called automatic insurance exist only when the one in service died without having applied for insurance.

It would seem clear that no right or authority existed, either on the part of the claimant or on the part of the bureau, to substitute automatic insurance for policy insurance where the same had been applied for. In the absence of two alternative rights, there can arise no question of an election.

As the court said in Bierce, Limited, v. Hutchins, 205 U. S. 340, 346, 27 S. Ct. 524, 525 (51 L. Ed. 828):

"Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone."

It appears from the record that, upon the insurance due the plaintiff up to the date of the filing of this action, there was due the sum of $6,382.50. It appears, also, from the stipulation on file in the case, that the amount of $2,775 has been erroneously paid to the plaintiff up to the date of the filing of the petition as automatic insurance, which sum both parties agree may and should be deducted, leaving a balance now due upon the insurance up to the date of the commencement of the action of $3,607.50, for which amount decision is awarded, and judgment may be entered.