**MYERS et al. v. ROSS.**

District Court, S. D. Florida, Jacksonville Division.

April 13, 1935.

F. B. Harrell and C. A. Avriett, both of Jasper, Fla., for plaintiffs.

Doggett, McCollum, Howell & Doggett, of Jacksonville, Fla., and John F. Harrell, of Live Oak, Fla., for defendant.

STRUM, District Judge.

This suit in equity is brought by Mrs. Max Myers to restrain the defendant receiver of the First National Bank of Jasper from applying dividends due on a deposit, title to which is claimed by Mrs. Myers, as a credit upon a judgment heretofore recovered by the receiver against Mr. Max Myers, husband of the plaintiff.

On October 2, 1925, Max Myers deposited in First National Bank of Jasper $8,000, evidenced by a certificate of deposit, due one year thereafter, payable to Max Myers. The money had been withdrawn from the earnings of a mercantile business conducted jointly by Mr. and Mrs. Myers, and was considered by them as "our reserve or sav-

ings account." When the certificate of deposit matured on October 2, 1926, it was renewed but made payable to Mrs. Myers, probably in order to forestall any effort of creditors of Max Myers, who had become involved in some real estate transactions, to reach the money.

Thereafter, certain business indebtedness of Mr. and Mrs. Myers to the bank was paid from these funds, and certain additions thereto were made in cash from the business, so that when the bank closed April 24, 1930, there remained on deposit $4,000, evidenced by renewal certificate of deposit, dated October 1, 1929, which recited that "Mrs. Max Myers has deposited in this bank $4,000.00, payable to the order of herself." The deposit stood in the name of Mrs. Max Myers, and certificates were made payable to her at all times from October 2, 1926, to the present time.

The above-mentioned indebtedness of the Myers to the bank, which was paid out of the aforesaid funds, was evidenced by promissory notes, some signed by Max Myers and some by Mrs. Max Myers. All of the indebtedness was incurred in the mercantile business conducted by Mr. and Mrs. Myers.

When the bank closed, it held promissory notes aggregating $2,400, executed by Max Myers. In an effort to make available the deposit, evidenced by the certificate of indebtedness, as an offset against the just-mentioned indebtedness of Max Myers to the bank, Mrs. Myers, shortly after the bank closed, and with the co-operation of the then receiver, who had full knowledge of her purpose and of all the facts, indorsed in blank the certificate of deposit and executed an affidavit disclaiming ownership of the deposit evidenced by the certificate, asserting the deposit to be the property of Mr. Myers. The receiver, however, upon instructions of the comptroller, rejected the purported disclaimer and refused to allow the deposit to be used as a set-off against the indebtedness of Max Myers to the bank.

The successor receiver, who was thereafter appointed, sued Max Myers on the law side of this court to recover on the above-mentioned promissory notes aggregating approximately $2,400. Mrs. Myers was not a party to that suit. By his pleas, Max Myers admitted execution of the notes and offered to set off against them the indebtedness of the bank evidenced by the certificate of indebtedness aforesaid, which indebtedness Max Myers asserted was due to him, notwithstanding the certificate stood in the name of his wife. To these pleas, the receiver replied that the indebtedness of the bank was evidenced by a certificate of deposit payable to Mrs. Max Myers, and denied that she had executed said disclaimer. The case was fully tried upon these issues. Myers claimed the money was his. The receiver contended that it belonged to Mrs. Myers, and that it was not the property of Max Myers. The jury returned a verdict for the receiver for the full amount of Myers' notes, with interest and attorneys' fees. In returning such a verdict the jury necessarily determined, and in entering judgment thereon this court on the law side in effect adjudicated, that the indebtedness of the bank, evidenced by the certificate of deposit, was the property of Mrs. Myers, not Max Myers. Thus the receiver fully succeeded in his contention that the money belonged to Mrs. Myers.

When dividends on the certificate of deposit became available for payment, the receiver, notwithstanding his contention in the common-law suit against Max Myers that the deposit was the property of Mrs. Myers, attempted to credit the dividends on the judgment secured by the receiver against Max Myers. This for the asserted reason that Mrs. Myers, subsequent to the closing of the bank, had indorsed the certificate of deposit in blank and had disclaimed ownership of the funds. But all this had occurred, and the receiver had knowledge of it, long prior to the time when in the common-law suit in this court he solemnly asserted, when it suited the interests of his trust so to do, that the deposit was not the property of Max Myers, but belonged to Mrs. Myers, and thus defeated Max Myers' attempted set-off. The facts are that since October, 1926, the funds have stood on the books of the bank to the credit of Mrs. Myers, and the certificate of deposit has been payable to her. Her purported blank indorsement and disclaimer of title, made in November, 1930, for the known purpose aforesaid, was rejected by the receiver. Since that time nothing has occurred which would change the title to the deposit from Mrs. Myers to Mr. Myers. As late as May 2, 1933, when the common-law suit was tried, the receiver, with knowledge of all the facts, contended that the deposit belonged to Mrs. Myers.

Having prevailed in that contention in the common-law suit, and having received the benefit of that attitude, the receiver

now completely reverses his attitude and claims the deposit to be the property of Mr. Myers, so that the receiver's trust may now reap the benefit of that attitude by applying dividends due on the certificate of deposit as a credit on the judgment secured by the bank against Max Myers.

Having already secured in effect an adjudication by this court on the common-law side that the deposit was the property of Mrs. Myers, the receiver now asks the court on its equity side to solemnly adjudicate the deposit to be the property of Max Myers by refusing to enjoin the receiver in applying the dividends as he proposes to do.

The court declines to sanction such inconsistency.

■ It is true that Mrs. Myers, for the purpose of attempting to aid her husband, and with the full knowledge and co-operation of the then receiver, executed a purported disclaimer of the funds. That disclaimer, however, was rejected by the comptroller, and by the receiver, as a basis for set-off against the indebtedness of Max Myers to the bank. Neither Mr. Myers nor Mrs. Myers received any benefit from the transaction. The purported disclaimer does not create an estoppel in pais against Mrs. Myers because the receiver has not relied upon, nor been mislead by it, to his prejudice; he having had full knowledge of all the facts and the purpose for which it was executed. Booth v. Lenox, 45 Fla. 191, 34 So. 566; Florida Land Investment Co. v. Williams, 98 Fla. 1258, 116 So. 642; Gray v. Gray, 91 Fla. 103, 107 So. 261; State v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; State of Oklahoma v. State of Texas, 268 U. S. 252, 45 S. Ct. 497, 69 L. Ed. 937; 21 C. J. 1117; 10 R. C. L. 697. On the contrary, the receiver has enjoyed and now retains the advantage of his prior attitude that the funds were the property of Mrs. Myers.

■ Neither can Mrs. Myers claim an estoppel in pais against the receiver as a result of his attitude in the common-law suit, because that was an action between the receiver and Max Myers, to which Mrs. Myers was not a party, and, as Mrs. Myers has not acted upon it to her prejudice, there would be no mutuality of estoppel. See Booth v. Lenox, supra; Lane v. Welds (C. C. A.) 99 F. 286; 10 R. C. L. "Estoppel," 145.

But the receiver, with full knowledge of all the facts, has made an election with respect to the title to the deposit, and consequently its avails which are the subject-matter of this suit, and has prosecuted that election successfully.

■ The doctrine of election differs from estoppel in the broader sense of the latter, in that the party invoking a prior election need not show that he will suffer material disadvantage unless his adversary is compelled to abide by his former election, nor is it necessary that the former election shall have been acted upon by the other party to his prejudice. Estoppel depends upon what a party causes his adversary to do. Waiver by election depends upon what the party himself intends to do, and has done. Flynn-Harris-Bullard Co. v. Hampton, 70 Fla. 231, 70 So. 385; 20 C. J. 4, 17.

■ A party cannot, either in the course of litigation, or in dealings in pais, occupy inconsistent positions. Where he has an election between two or more inconsistent courses, and has knowledge of all the facts, he will be confined to that which he first adopts. Such election, knowingly made, cannot be withdrawn even though it has not been acted upon by another to his prejudice. Campbell v. Kauffman Milling Co., 42 Fla. 328, 29 So. 435; Capital City Bank v. Hilson, 64 Fla. 206, 60 So. 189, Ann. Cas. 1914B, 1211; Intertype Corporation v. Pulver (D. C.) 2 F. Supp. 4.

■ The basic concept of the doctrine of election is that a party shall not be permitted to insist at different times upon the truth of two inconsistent and repugnant positions, according to the promptings of his own interest, as to first affirm and later disaffirm a contract, or the like. Perry v. Shumway, 73 Vt. 191, 50 A. 1069. In other words, a suitor will not be permitted to invoke the aid of the courts upon contradictory attitudes, knowingly assumed, based upon the same facts. 20 C. J. 5.

■ The facts which determine the ownership of the deposit have not changed since November, 1930. Since that time, and as late as May 2, 1933, when the common-law suit was tried, the receiver has vigorously contended that the deposit belonged to Mrs. Myers, and that the purported blank indorsement and disclaimer were without effect. The deposit cannot be the property of Mrs. Myers at one time and for one purpose, and the property of Mr. Myers at another time for another purpose; there having been no change in the facts from which ownership is to be determined.

By his defense in the common-law suit, the receiver, with full knowledge of all the facts, repudiated the purported indorsement and disclaimer of title of Mrs. Myers, and elected to contend that the bank was the debtor of Mrs. Myers, not of Mr. Myers. He prosecuted that contention to a successful determination, thus defeating Max Myers' claim to set-off. He cannot now recant and claim that the indorsement and disclaimer were effectual to convey title to the deposit to Mr. Myers and to constitute the bank Mr. Myers' debtor, so as to now justify the receiver in applying the dividends as a credit upon the bank's judgment against Mr. Myers. These two positions are inconsistent and repugnant. It would be little less than a travesty for this court on its common-law side to deny to Max Myers the right to set off the deposit against his indebtedness to the bank, as has been done upon the receiver's contention that the deposit belonged to Mrs. Myers, and then adjudge on the equity side that the receiver is at liberty to take the dividends on that same deposit and apply them as a credit upon the judgment obtained against Max Myers on the common-law side of this court.

Decree for plaintiff enjoining the defendant receiver as prayed.