GLADNEY, Judge.
This legal controversy was initiated on April 12, 1962 by an expropriation suit brought by the Bienville Parish Police Jury against Dr. George Melvin Stamper and others, for the purpose of widening the right-of-way of an existing road traversing Dr. Stamper’s property in Lot 4, Section 33, Township 16 North, Range 10 West, Bien-ville Parish, Louisiana. Attached to the suit was a plat depicting the right-of-way sought for the highway and the surrounding property affected thereby. It was alleged by the Police Jury that a certain part of the property included in the project need not be expropriated as it lay below the United States Government Traverse Line,, title to which was vested in the State of Louisiana, and by reason of a right-of-way deed from the Lake Bistineau Game and Fish Commission to the Police Jury. While-that suit was pending, Dr. Stamper filed this, possessory action, alleging that he was ini actual possession of the property claimed by the Police Jury and that the expropriation-suit constituted a disturbance in law. He-prayed that he should be recognized and maintained in possession of the following described property:
“Lots 2 and 3 of Shady Point Park, a subdivision lying in the Southwesterly part of Government Lot 4 of Section 33, Township 16 North, Range 10 West,. Bienville Parish, Louisiana, and a tract of land lying South of the existing dedication of the public road through-part of U. S. Government Lot 4.”
By responsive pleadings the Bienville-Parish Police Jury judicially confessed Stamper’s possession and the disturbance of the property. Then, by asserting indicia of its ownership, the suit was converted into-a petitory action. The case was tried upon-the issue of title and judgment was rendered' recognizing the right of the Bienville Parish-Police Jury to the property in dispute and' ordering Dr. Stamper to surrender possession and remove all improvements from the proposed right-of-way. He has appealed.
Both litigants claiming as owners have submitted evidence of title.
The Police Jury traces its title to the Lake Bistineau Game and Fish Commission, which, in turn, derived its title from the State of Louisiana through Act 43 of 1930, as amended by Act 64 of 1942:
“Be it enacted by the Legislature of Louisiana, That the Lake Bistineau State Game and Fish Preserve is hereby created out of Dorcheat Bayou and Lake Bistineau situated in the Parishes of Bienville, Bossier, and Webster, *505 South of Dixie-Overland Highway between Shreveport and Minden in Webster Parish, and extending South in Township Fifteen (15) and into Bossier and Bienville Parishes, and the territory comprising the preserve shall be all that land along Dorcheat Bayou and Lake Bistineau below mean high water mark as shown by the meandering lines as now of record, until new lines and boundary be defined by surveys made under supervision of the Department of ■Conservation, and the Commission in ■charge of this Lake Bistineau State ■Game & Fish Preserve shall have aik-thority and control extending one-half Q/2) mile beyond such boundary lines now established, or that may be established.”
Under this same act as amended, this State agency was given the right to build roads “ * * * to buy, lease, or sell property necessary to the establishment and maintenance, or improvement of said preserve * * By virtue of said authority a right-of-way deed to the Police Jury was executed.
Dr. Stamper deraigns his title through mesne conveyance from the Vicksburg, Shreveport & Texas Railroad Company, which acquired from the United States through a Commissioner’s certificate, issued by the General Land Office, dated ■October 8, 1959, the transfer containing 236.04 acres in fractional Section 33, Township 16, Range 10, as therein described. Dr. Stamper evidences present title to that portion of Lot 4 in dispute. His title is derived from two acts of conveyance from Earnest O. McCoy, under deed dated De■cember 19, 1959, recorded in Conveyance Book 236, page 327, and a correction deed ■dated February 4, 1961, recorded in Con-veyance Book 238, page 1 of the Bienville Parish records. The effect of the correction deed was to grant unto Dr. Stamper •title held by the vendor to any property lying within Lot 4 and north or west of the Traverse Line.
The official plat of Township 16 North, Range 10 West, as approved by the Surveyor General’s' Office on December 8, 1842, discloses Lot 4 is bounded on the west and on the north by Lake Bistineau and is represented on said plat as containing 20.58 acres. The east boundary of this township was surveyed in 1830 by Stephen Howard and the balance of the township was surveyed in 1838 by Nathan Webster and John McCollum. The Surveyor General certified these surveys were strictly conformable to the field notes as filed in his office.
The Police Jury and Dr. Stamper tendered and relied upon a plat prepared by Wayne E. Williamson as of March 22, 1962. On the plat the 148.6 foot Contour Line is shown “as noted on Shady Point Park Recording Plat.” This line was surveyed and placed on the Shady Point Park Subdivision plat by John R. Bowman, registered civil engineer, as per plat dated July 18, 1962. George Dutton, civil engineer, on February 2, 1960, also platted the 148.6 foot Contour Line. The Bowman and Williamson plats reflect the United States Government Traverse Line emanating from the survey of Nathan Webster and John McCol-lum in 1838. The 148.6 foot Contour Line commences at the southwest corner of Lot 4, which is at the edge of the water of Lake Bistineau and runs north sixty degrees east, 1,188 feet to a point and thence the line proceeds 9.41 degrees east 87.80 feet to a point where it traverses the east line of said Lot 4. At the latter point the Traverse Line is approximately 247 feet east of the 148.6 foot Contour Line which constitutes the western boundary of Shady Point Park Subdivision. As indicated on said plats the portion of Lot 4 lying between the Contour Line and the Traverse Line is approximately 2.53 acres. The property in dispute in this suit lies between the Contour Line and the Traverse Line.
The contention of the Police Jury is that the title of Dr. Stamper as derived from the United States is bounded on the west by the Traverse Line and that this *506 same line constitutes the eastern boundary of the State of Louisiana. Dr. Stamper holds that the 148.6 foot Contour Line is the dividing property line between himself and the State of Louisiana, and that, therefore, the State of Louisiana has no title to the property in dispute, which lies east of the Contour Line.
No one has charged that the 148.6 foot Contour Line as indicated on the plats of Wayne E. Williamson, John R. Bowman and George E. Dutton is in error, and it has been established to our satisfaction. The same is true as to the Traverse Line as shown on the Williamson and other plats.
This court, is, therefore, called upon to decide whether the Traverse Line or the 148.6 foot Contour Line is controlling as to the property in dispute. In this respect the State of Louisiana by reason of its sovereignty has title to the submerged and uncovered land formerly and presently constituting Lake Bistineau, up to the mean high water level mark, which figure represents the elevation above mean sea level. Bedingfield v. Watson, La.App., 147 So.2d 458, 460 (2d Cir.1962). The location of this elevation is subjept to such variation along the shores of water bodies it defies accurate description. Because of this, in the disposition of its public lands Government surveyors inserted meander or Traverse Lines on their maps, which permitted a determination of the amount of property contained in the particular Government Subdivision bordering the body of water. On official plats of Government Subdivisions adjacent to rivers, lakes or other bodies of water, the Government surveyors designated such fractional portions of sections as lots. In granting title to these lots, title thereto was conveyed by the Government to the water, that is, the mean high water level, except only in instances where there was gross error in the survey and it was apparent that the surveyor had omitted a large amount of land or had failed to place the Traverse or Meander lines approximately at the mean high water stage. It was stated in St. Paul & Pacific R. Company v. Schurmeir, 7 Wall. 272, 19 L.Ed. 74, 78 (1869):
“Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser. “In preparing the official plat from the field notes, the meander line is represented as the border line of the stream, and shows, to a demonstration, that the water-course, and not the meander line, as actually run on the land, is the boundary.”
This principle was recognized in Hardin v. Jordan, 140 U.S. 371, 11 S.Ct. 808, 811, 35 L.Ed. 428, 432 (1891):
“The patent itself does not contain all the particulars of the survey, but the grant of the lands is recited to be according to the official plat of the survey of said lands, returned to the General Land Office by the surveyor general, thereby adopting, the plat as a part of the instrument.”
And the court made the further appropriate comment:
“It has been the practice of the government from its origin, in disposing of the public lands, to measure the price to be paid for them by the quantity of upland granted, no charge being made for the lands under the bed of the stream, or other body of water. The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. It has frequently been held, both by the federal and state courts, that such meander lines are intended for the *507 purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered, and that the waters themselves constitute the real boundary. (Citing cases) ”
In Mitchell v. Smale et al., 140 U.S. 406, 11 S.Ct. 819, 840, 35 L.Ed. 442, 444 (1891) the Supreme Court of the United States stated:
“ * * * The difficulty of following the edge or margin of such projections, and all the various sinuosities of the water line, is the very occasion and ■cause of running the meander line, which by its exclusions and inclusions of such irregularities of contour produces an average result closely approximating to the truth as to the quantity of upland contained in the fractional lots bordering on the lake or stream. The official plat made from such survey does not show the meander line, but shows the general form of the lake deduced therefrom, and the surrounding fractional lots adjoining and bordering on the same. The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are bounded by the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow.”
As indicated by an exhibit filed in the record, the Bureau of Land Management of the Department of Interior, recognizes that at the date of the original surveys the level of Lake Bistineau was 148.6 feet above mean sea level, and except where public lands of the United States have been omitted from the original survey by gross error or fraud, that office is guided by decisions on similar situations, such as was presented in United States v. Lane, 260 U.S. 662, 43 S.Ct. 236, 67 L.Ed. 448, 450, 451, (1923) which held that under the facts of the case the waters of the lake and not the Traverse Line, constitute the boundary.
The Supreme Court of Louisiana in Land v. Brockett, 162 La. 519, 110 So. 740, 741, 742 (1926), with Chief Justice O’Niell as its organ had under consideration whether certain high land bordering on Cross Lake and lying between the lake and the Traverse Line, was included in the patent from the United States. The court held that such land was not so included since the discrepancy between the Traverse Line and the water line was so great, and the proportion omitted so vast. In the opinion the Court stated the applicable rules concerning the legal effect of meander lines as follows:
“The case is governed by the decisions of the Supreme Court of the United States on the subj ect. The general rule is that meander lines purporting to represent the edge of a navigable stream or body of water are not to be regarded as boundary lines, and that a land patent that refers to an official plat showing that the land borders on a navigable body of water conveys title to the water line. The reason for the rule is that it is not possible for a survey- or to delineate precisely, in a series of straight lines, the meanders of a stream or body of water. One of the exceptions to the rule stated is that, when the discrepancy between the meander line shown on the official plat and the actual water line is so gross, and the area of high land omitted from the survey is so great in comparison with the subdivision surveyed, as to make it certain that the surveyor did not actually make, approximately, a meander of the water line, the government may afterwards survey and dispose of the omitted high land as public land which was theretofore unsurveyed. No hard and fast rule has been or can be established, based upon the extent of discrepancy, or proportion of omitted area, *508 that would he applicable to any and every case. The general rule, that the patentee takes title to the actual water line, was applied in the following cases, relied upon by the plaintiff in this case, viz.: (Cases cited).”
It is apparent that in the instant case the quantity of land in Lot 4 lying between the Traverse Line or Meander Line and the Contour or water line is not so great that we would be justified in saying it was not included in the patent from the United States, but was omitted through error or fraud. As previously pointed out, the land affected is 2.53 acres. Unquestionably, in our opinion, Stamper’s property extends to the water line or 148.6 foot Contour Line and does not merely stop at the Traverse Line. We find the water line as accepted by the United States and the State of Louisiana should conform to an elevation of 148.6 feet above mean sea level, and has been properly shown on plats by engineers Williamson, Bowman and Dutton, and presently constitutes the west or north line of certain lots of the Shady Point Park Subdivision. It is our conclusion, therefore, that the State of Louisiana has never had title to the property east or south of the 148.6 foot Contour Line. The Traverse Line under discussion herein does not reflect the boundary line of the Stamper property in this case.
We are mindful that counsel for appellant has charged the judgment with error in not holding that the action of the Lake Bis-tineau Game and Fish Commission in granting a right-of-way to the Bienville Parish Police Jury was ultra vires. Also other assignments of error are made, but because of our conclusion that the State did not have title to the property in dispute, we find it unnecessary to decide these issues.
Accordingly, the judgment from which appealed is annulled, set aside and reversed, and it is now ordered that George Melvin Stamper be recognized as the true and lawful owner of the following described property, situated in Bienville Parish, Louisiana:
“Lots 2 and 3 of Shady Point Park, a. subdivision lying in the Southwesterly part of Government Lot 4 of Section 33,. Township 16 North, Range 10 West, Bienville Parish, Louisiana, and a tract of land lying South of the existing dedication of the public road through part of U. S. Government Lot 4.”
Costs are assessed against appellee, subject to the exemption provided in LSA-R.S. 13:4521.
Rehearing denied; AYRES, J., dissents.